**Aditi VASHI and Rakesh Vashi, Plaintiffs,**

v.

**The CHARTER TOWNSHIP OF WEST BLOOMFIELD, Commissioners Raymond R. Holland, Anne H. Jardon, Donald A. Ziemer, Lawrence Brown, and John Freed, Defendants.**

No. 00–CV–74729.

United States District Court, E.D. Michigan, Southern Division.

June 28, 2001.

James C. Howarth, Juan A. Mateo, Jr., Detroit, MI, for plaintiffs.

Gerald A. Fisher, Secrest, Wardle, Farmington Hills, MI, Carol A. Rosati,

Laura S. Amtsbuechler, Johnson, Rosati, Farmington Hills, MI, Gregory T. Stremers, Secrest, Wardle, Farmington Hills, MI, for defendants.

*OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR DISMISSAL/SUMMARY JUDGMENT AND DISMISSING PLAINTIFFS' CLAIMS WITHOUT PREJUDICE*

STEEH, District Judge.

Defendants The Charter Township of West Bloomfield, Raymond Holland, Anne Jardon, Donald Ziemer, Lawrence Brown and John Freed move for dismissal/summary judgment of plaintiffs Aditi and Rakesh Vashi's claims of conspiracy to violate the plaintiffs' civil rights as actionable under 42 U.S.C. §§ 1981, 1983 and 1985, violations of substantive due process, deprivation of equal protection of law as actionable under § 1981, and gross negligence. For the reasons set forth below, defendants' motion for summary judgment will be GRANTED, and plaintiffs' claims will be DISMISSED without prejudice.

### I. Background

Plaintiffs, husband and wife, filed a four count complaint on October 24, 2000 alleging that, in June 1999, they began exploring the possibility of establishing a child daycare center in West Bloomfield Township. Plaintiffs allege they contacted Holy Spirit Lutheran Church Pastor Bruce Quatman, who expressed an interest in the daycare center and scheduled a meeting. Plaintiffs allege they informed Pastor Quatman of their Hindu religion as well as their prior daycare experience. According to the plaintiffs, Pastor Quatman responded with great interest, offering to convey the plaintiffs' daycare proposal to members of the Church Council.

Plaintiffs continue that they visited the Church in August 1999 and found the premises to be very suitable. On August 16, 1999, the Church Council allegedly accepted the daycare proposal and, a week later, forwarded the Church's written intent to lease space to the plaintiffs. Pastor Quatman allegedly instructed the plaintiffs to obtain the necessary approvals from defendant Township and state licensing authorities. Plaintiffs thereafter allegedly approached Township Planning Director Thomas Bird, who allegedly told Ms. Vashi that she "didn't know what she was getting into", and would be required to expend $4,000.00 to $5,000.00 for an architect to provide proper documentation. Plaintiffs were then allegedly referred to one Phillip Gentile of the Township Planning Department, who only provided the plaintiffs with sprinkler system requirements. In frustration, plaintiffs allegedly hired architect Loni Zimmerman. Plaintiffs allege Zimmerman provided information regarding site requirements, but proposed a fee structure for further work, citing Planning Director Bird's warning about the expense of such a project. Plaintiffs allegedly decided to perform further work without Zimmerman's assistance.

Plaintiffs further allege that, on October 19, 1999, and prior to a formal hearing, they submitted their initial proposal to Planning Director Bird's office consistent with a Township policy of providing a "work session" before formal submission. Plaintiffs allege they were informed by Bird's secretary days later that they would not receive a work session because one was not needed, and that their Planning Commission hearing was scheduled for November 9, 1999; Plaintiffs allege they were misled to believe that they would not need a work session because their proposal was going to be approved. Plaintiffs allege that they thereafter met with Church personnel to negotiate a lease, reaching a verbal agreement of a 5 year lease with an

option to renew. The plaintiffs allegedly met again with Pastor Quatman and Church C.P.A. Carolyn Reigler to determine an appropriate rental payment. In preparing for the November 9, 1999 hearing, plaintiffs also allegedly completed certain state inspections. Plaintiffs allege Michigan Department of Consumer and Industry Services Licensing Consultant Margaret Block confirmed on November 5, 1999 that the Church site was suitable for licensure for up to 65 children.

Plaintiffs continue that, at the November 9, 1999 Planning Commission public hearing, their daycare proposal was initially supported on a first motion for approval, with the Commission citing the need for daycare centers in the area. Plaintiffs allege the proposal was ultimately denied by a vote of 5–2, however, with defendants Holland, Jardon, Ziemer, Brown and Freed voting against the proposal. Plaintiffs allege the reasons given for the denial were interference with orderly development of the area, and possible health, safety and welfare problems arising from increased traffic. Plaintiffs allege Planning Commission members also construed the daycare proposal as an inappropriate "second special use" on the basis that the plaintiffs were not Church members, and that the day care operation was a "for-profit, secular use of the church." According to the plaintiffs, when they asked what could be done to perfect their proposal, the Planning Commission simply responded that they were done. When plaintiffs allegedly called Planning Director Bird a day later on November 10, 1999, Bird allegedly told the plaintiffs he did not understand "where the Planning Commission was coming from."

Plaintiffs allege they met with Church officials on November 11, 1999. Although Church officials allegedly agreed that "plaintiffs had prepared their proposal 100%", and that the results of the Planning Commission denial were disappointing, the Church expressed their unwillingness to pursue an appeal to the Township Board because, according to Church officials: (1) a fight with the Township could cause infighting among members of the congregation; (2) the Township wanted a religious-based day care program which the plaintiffs, as Hindus, could not provide; (3) defendant Commissioner Ziemer was an ex-Church member, and defendant Commissioner Freed was a current Church member and former Church pastor; (4) defendant Freed could undermine Pastor Quatman's leadership in the Church, and; (5) an appeal could jeopardize Pastor Quatman's current job. Plaintiffs allege that, lacking Church support, they were compelled to withdraw their petition rather than seek an appeal, especially when considering Ziemer's and Freed's ties to the Church.

Plaintiffs continue that, a few days after meeting with the Church officials, Pastor Quatman revealed that he had spoken to Township Supervisor and Board Chairman Jeddy Hood, who responded in a manner that led Pastor Quatman to believe that Hood sided with the Planning Commission's decision. Plaintiffs received a three page denial letter from the Planning Commission on November 14, 1999, stating the proposal had been denied based, in part, on comments made by Planning Commissioners, yet omitting any reference to the initial approval. On November 19, 1999, plaintiffs submitted their proposal withdrawal.

Plaintiffs allege a subsequent investigation revealed that their proposal was compatible with existing uses and met all zoning requirements. Plaintiffs also discovered that: several daycare centers operating at churches and other religious facilities had been approved; Township

had run non-secular, for-profit programs at the Church for over twenty years; Township had approved the "Tutor Time" daycare center which posed far greater traffic concerns while failing to meet certain zoning requirements; Township used the Church of the Advent for Township Parks and Recreation offices; Michigan does not distinguish between a "daycare center" and "nursery school"; Township operates non-secular Community Education centers at religious facilities; a large development at Holy Spirit Church posing serious traffic problems was approved for re-zoning one month after plaintiffs' proposal was denied; Township has been advised since 1973 that a daycare center is a common secondary use of church property which "should not create any detrimental effect on the health, safety and welfare of Township residents"; the Township Planning Commission approved a nursery school use at Holy Spirit Lutheran Church in 1973, and; in the last 18 months, the Township Planning Commission denied only 2 of 70 individual petitions—plaintiffs' petition and a petition that failed for "a technical reason."

Plaintiffs thus allege that the reasons given by the Planning Commission for denying plaintiffs' proposed daycare facility are merely a pretext for unlawful ethnic (East Indian) and religious (Hindu) discrimination. Specifically, plaintiffs allege in Count I that the defendants are liable for conspiring to deny the plaintiffs' daycare proposal on the basis of plaintiffs' ethnic and religious status, thus prohibiting the plaintiffs from exercising their right to free speech, right to associate with those of their own choosing, right to due process of law, and right to equal protection of law, all in violation of 42 U.S.C. §§ 1981, 1983 and 1985. In Count II, plaintiffs allege the defendants are liable for violating the plaintiffs' substantive due process rights, also actionable under 42 U.S.C. §§ 1983 and 1985. Count III alleges the defendants have denied the plaintiffs equal protection of the law, as actionable under 42 U.S.C. § 1981. Count IV alleges the defendants are liable for gross negligence under Michigan statute M.C.L. § 691.1407 *et seq.*

## II. Standard of Review

■ Defendants move for dismissal/summary judgment of plaintiffs' several claims. If, as here, in moving for dismissal under Rule 12(b)(6) the parties rely upon matters outside of the pleadings that are not excluded by the court, the motion shall be treated as one for summary judgment under Rule 56. *See* Fed.R.Civ.P. 12(b). The parties are not likely to be surprised by a conversion of the defendants' motion for dismissal to a motion for summary judgment, and therefore prior notice of the conversion is not required. *See Dayco Corp. v. Goodyear Tire & Rubber Co.,* 523 F.2d 389, 393 (6th Cir.1975).

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See FDIC v. Alexander,* 78 F.3d 1103, 1106 (6th Cir.1996). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Kutrom Corp. v. City of Center Line,* 979 F.2d 1171, 1174 (6th Cir.1992).

The standard for determining whether summary judgment is appropriate is " 'whether the evidence presents a suffi-

cient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Winningham v. North Am. Resources Corp.*, 42 F.3d 981, 984 (6th Cir. 1994) (citing *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir.1989)). The evidence and all reasonable inferences drawn therefrom must be construed in a light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Enertech Elec., Inc. v. Mahoning County Comm'rs*, 85 F.3d 257, 259 (6th Cir.1996); *Wilson v. Stroh Cos., Inc.*, 952 F.2d 942, 945 (6th Cir.1992).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *see also Adams v. Philip Morris, Inc.*, 67 F.3d 580, 583 (6th Cir.1995). Mere allegations or denials in the non-movant's pleadings will not meet this burden. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The nonmoving party cannot rest on its pleadings to avoid summary judgment, but must support its claim with some probative evidence. *Kraft v. United States*, 991 F.2d 292, 296 (6th Cir.), *cert. denied*, 510 U.S. 976, 114 S.Ct. 467, 126 L.Ed.2d 419 (1993).

## III. Argument

Defendants argue they are entitled to the dismissal of plaintiffs' claims because the plaintiffs failed to obtain a final decision from the Township Board, instead withdrawing their proposed daycare use application before a final decision could be rendered. Defendants assert the Planning Commission is only a recommending body, and that the Township Board enjoys the sole authority to approve or deny site plan proposals and proposed special uses. Defendants argue that the plaintiffs' failure to await a decision by the Township Board demonstrates the plaintiffs' claims are not ripe for review, that the plaintiffs lack standing, and that the court lacks jurisdiction to adjudicate the claims. Defendants maintain that the plaintiffs' First Amendment claims cannot withstand the ripeness requirement because plaintiffs have alleged only "as applied claims."

Defendants also argue that the plaintiffs cannot prevail on the merits because the Planning Commission exercised its discretion and denied the application based on legitimate land use principles and plaintiffs' failure to meet minimum ordinance requirements—being an outdoor play area of not less than 5,000 square feet, and a play area for the proposed 65 children facility of 9,750 square feet. Defendants assert that none of the evidence in the record refers to the plaintiffs' ethnicity or religion as a basis for the Planning Commission's recommendation, and that plaintiffs' claims of unlawful discrimination are merely speculative.

Plaintiffs respond that Township Zoning Ordinance § 26–73 demonstrates that Planning Commission approval is necessary to obtain the Township Board's final approval, and that the Planning Commission is not just, as defendants argue, a recommending body. Plaintiffs refute the defendants' characterization of this lawsuit as a "zoning case" subject to exhaustion requirements, maintaining instead that the crux of this lawsuit is whether their proposed daycare center was denied because the defendants did not want Asian Hindus operating a daycare center out of the Holy Spirit Lutheran Church.

Plaintiffs continue by arguing that there is ample evidence that the reasons given by the Planning Commission for denying the daycare proposal were merely a pretext for unlawful discrimination. For example, plaintiffs rely on the Township's refusal to provide a pre-hearing "work session" to work out technical problems, contrary to Township policy. Plaintiffs continue that some technical requirements, such as the minimal square footage for a play area, were only recorded in an internal Planning Commission report, a report that also contradicts the Planning Commission's finding that new curbs are needed. Plaintiffs also assert the defendants ignored that part of the proposal stating that only 20 children would be permitted to play outside at any given time, thus complying with the Township's square footage requirements. Plaintiffs maintain that, despite the Township's criticism, plaintiffs could not get certain state licensing before the plan was approved by the Township, and that the Township Zoning Ordinance does not even require prior licensing. Plaintiffs argue that defendants reliance on the "for-profit" status of the proposal was also misplaced as the issue is a tax matter, not a zoning matter. In further support of their claims of pretext, plaintiffs point to the initial approval of their proposal subject to amendments proposed by the defendants themselves, curing any claimed proposal deficiencies, and the subsequent 5–2 denial of the amended proposal followed by a second 5–2 denial of the proposal outright. Plaintiffs argue the initial denial constitutes "smoking gun" evidence that the Planning Commission and the five Commissioner defendants decided to deny the daycare proposal before the hearing. Plaintiffs proffer a video-tape and transcript of the November 9, 1999 hearing to demonstrate the defendants were motivated in their decision-making by the plaintiffs' religion and ethnic heri-

tage, emphasizing questions asked by Commission members such as whether the plaintiffs were members of the Church, whether the Church should have filed the application, and whether the Church worship area, or sanctuary, would be used as part of the proposed daycare center.

In reply, defendants argue plaintiffs have failed to address the issue of whether their claims are ripe for review. Defendants state that, should the court deny the instant motion based on the ripeness of plaintiffs' claims, defendants will file another motion for summary judgment and refute the plaintiffs' factual allegations made in support of their unlawful discrimination claims. Defendants reiterate in reply that this is a zoning case in which the plaintiffs sought site plan and special use approval for their proposed daycare center, then abandoned the process before a final decision could be reached by the Township Board. Defendants' maintain that dismissal would not be unfair at this stage of the proceedings because a dismissal based on lack of jurisdiction is without prejudice. Defendants argue they have never interpreted their Zoning Ordinance to require Planning Commission approval before the Township Board may grant approval.

## IV. Analysis

### A. Finality Requirement

"[A] claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City,* 473 U.S. 172, 186, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). In *Williamson,* a landowner alleged that a county planning

commission deprived him of property without just compensation in violation of the Fifth Amendment, and deprived him of due process guaranteed by the Fourteenth Amendment, in denying a land development proposal because it did not comply with existing zoning ordinances and subdivision regulations. The Supreme Court held that the constitutional claims should be dismissed because the landowner did not seek variances from the planning commission and zoning board of appeals that would have resolved objections to the development proposal. *Id.* at 187–188, 200, 105 S.Ct. 3108. The court reasoned that the takings claim "simply cannot be evaluated until the administrative agency has arrived at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question." *Id.* at 191, 105 S.Ct. 3108. In rejecting the argument that the plaintiff was not required to exhaust his administrative remedies in pursuing a 42 U.S.C. § 1983 action, the Court explained:

.... The question whether administrative remedies must be exhausted is conceptually distinct, however, from the question whether an administrative action must be final before it is judicially reviewable. While the policies underlying the two concepts often overlap, *the finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury;* the exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate.

....

The difference is best illustrated by comparing the procedure for seeking a variance with the procedures that ...

respondent would not be required to exhaust. While it appears that the State provides procedures by which an aggrieved property owner may seek a declaratory judgment regarding the validity of zoning and planning actions taken by county authorities, respondent would not be required to resort to those procedures before bringing its § 1983 action, because those procedures clearly are remedial. Similarly, respondent would not be required to appeal the Commission's rejection of the preliminary plat to the Board of Zoning Appeals, *because the Board was empowered, at most, to review that rejection, not to participate in the Commission's decisionmaking.*

Resort to those procedures would result in a judgment whether the Commission's actions violated any of respondent's rights. *In contrast, resort to the procedure for obtaining variances would result in a conclusive determination by the Commission whether it would allow respondent to develop the subdivision in the manner respondent proposed.* The Commission's refusal to approve the preliminary plat does not determine that issue; it prevents respondent from developing its subdivision without obtaining the necessary variances, but leaves open the possibility that respondent may develop the subdivision according to its plat after obtaining the variances. In short, the Commission's denial of approval does not conclusively determine whether respondent will be denied all reasonable beneficial use of its property, and therefore is not a final, reviewable decision.

*Id.* at 192–193, 105 S.Ct. 3108 (emphasis added) (internal citations omitted). The *Williamson* Court held that a $350,000.00 jury verdict had been premature, and remanded the matter for dismissal. *Id.*

In *Bigelow v. Michigan Department of Natural Resources*, 970 F.2d 154 (6th Cir. 1992), the Sixth Circuit relied upon *Williamson* in dismissing commercial fishermen's taking, denial of due process, and denial of equal protection claims challenging the State of Michigan's support for federal government attempts to restore aboriginal fishing rights to Michigan Indians. The *Bigelow* court initially explained that "[i]f a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed." *Id.* at 157. Applying *Williamson,* the *Bigelow* court then found that the commercial fisherman did not pursue a final decision from the State of Michigan in that they did not previously file an inverse condemnation claim in state court. *Id.* at 158. The court continued by holding that the "finality analysis" as applied in *Williamson* is also applicable to equal protection claims and substantive due process claims challenging the application of land use regulations, as well as procedural due process claims which do not challenge the constitutionality of a zoning ordinance. *Id.* at 159 (citing *Hoehne v. San Benito County*, 870 F.2d 529, 532 (9th Cir.1989) and distinguishing *Nasierowski Brothers Investment Co. v. City of Sterling Heights*, 949 F.2d 890 (6th Cir.1991) (holding that landowner was not required to seek variance from new ordinance where landowner challenged the constitutionality of the process by which the new ordinance was enacted)).

What is needed before litigation can proceed in a case such as this is that proceedings have reached some sort of an impasse *and the position of the parties has been defined.* We do not want to encourage litigation that is likely to be solved by further administrative action and we do not want to put barriers to litigation in front of litigants when it is obvious that the process down the administrative road would be a waste of time and money. We believe that finality, not the requirement of exhaustion of remedies, is the appropriate determinant of when litigation may begin. *By finality we mean that the actions of the city were such that further administrative action ... would not be productive.* *Id.* at 158 (emphasis added) (quoting *Bannum v. City of Louisville*, 958 F.2d 1354, 1362–1363 (6th Cir.1992)).

Plaintiffs Aditi and Rakesh Vashi allege that Township and the individual defendant Planning Commissioners conspired to deny, and denied, their constitutional rights to free speech, free association, procedural and substantive due process, and equal protection of the law through their denial of the proposed daycare facility under the premise of Township zoning ordinances. Plaintiffs are not challenging the legality of the zoning ordinances, or the legality of the process used by Township to render decisions on land use proposal applications. Rather, plaintiffs are claiming that the defendants reached their decision to deny the daycare proposal based on the illegitimate criteria of the plaintiffs' ethnicity and race. Consistent with the reasoning in *Williamson* and *Bigelow,* this court enjoys subject matter jurisdiction over plaintiffs' constitutional claims only if the Planning Commission's November 9, 1999 decision was a *final decision,* reflecting the Township's definitive position on the proposal. *Williamson,* 473 U.S. at 186, 192, 105 S.Ct. 3108; *Bigelow,* 970 F.2d at 159.

*City of Cleburne, Texas v. Cleburne Living Center, Inc.,* 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985), relied upon by plaintiffs, does not warrant a different conclusion. In *Cleburne,* landowners challenged the validity of a zoning ordinance requiring a special use permit to operate "hospitals for the insane or feeble-minded". *Id.* at 435–436, 105 S.Ct. 3249. The

Cleburne City Council denied an application for a special use permit to operate a group youth home for mentally impaired residents, and the landowner responded by filing a federal action alleging that the special use requirement discriminated against mentally impaired persons in violation of the constitutional right to equal protection of the laws. *Id.* at 436, 105 S.Ct. 3249. The Supreme Court held that the special use zoning requirement as applied to the proposed youth home violated the equal protection clause absent a rational basis for distinguishing between housing for the mentally impaired and housing for other persons such as housing in hospitals and apartments. *Id.* at 447, 450, 105 S.Ct. 3249. The distinguishing feature in *Cleburne* is that the City Council's decision was never disputed to be anything other than a final decision of the City of Cleburne. Further, the Vashi plaintiffs do not allege that it is unconstitutional for defendant Township to require a special use permit to operate a daycare center. *Cleburne* is simply inapplicable. The dispositive issue is whether the November 9, 1999 Planning Commission decision was a final decision of the Township.

### B. Planning Commission Decision

■ The Township zoning ordinances read in part:

**Sec. 26–40. Site plan review (all district)**

(a) A site plan shall be submitted to the planning commission for approval:

(1) Any use or development for which the submission of a site plan is required by any provisions of this chapter....

(e) Site plan approval shall be effective for a period of one (1) year..... Any proposed change in site plans after the planning commission approval shall require review and approval by the planning commission.....

(j) *Appeal.* Any resident of the township, or an applicant, aggrieved by the action of the planning commission under this section shall be entitled to a hearing by the township board, provided a request for such hearing is made to the township clerk in writing not more than twenty-one (21) days following the action of the planning commission. The hearing shall be held as soon as reasonably practicable, but not more than forth [sic]-five (45) days after the filing of a request, unless the party requesting the hearing and the township agree to a later date. *The township board may, after a hearing, affirm, modify or reverse any decision of the planning commission. If a written request for appeal is not timely made, the action of the township planning commission shall be final.*

Defendants' Exhibit A (emphasis added). The zoning ordinances continue:

**Sec. 26–73. Uses permissible on special approval.**

(1) The following uses may be permitted in the R–10, R–12.5, R–15 and R–30 one-family residential districts after review and approval of the site plan by the planning commission and provided that the planning commission finds that the use would not be incompatible with already existing uses in the area or would not interfere with orderly development of the area and will not be detrimental to the safety or convenience of vehicular or pedestrian traffic, subject to the conditions imposed for each use, and *subject to final approval by the township board:*

. . .

(f) Child care centers....

*Id.* (emphasis added).

The video-tape proffered by the plaintiffs depicts Planning Commission Chairman Donald Ziemer initially stating at the November 9, 1999 hearing that the plain-

tiffs were seeking both site plan approval and special use approval for their proposed daycare center. At the end of the meeting, and following a 5–2 vote recommending denial of the proposal to the Township Board, Chairman Ziemer is depicted on the video-tape telling the plaintiffs repeatedly that a "final decision" would have to come from the Township Board.

RAKESH VASHI: Now, does this mean this church cannot have a day care—

COMMISSIONER JARDON: No.

CHAIRMAN ZIEMER: No.

RAKESH VASHI:—in the future?

COMMISSIONER JARDON: Certainly not.

CHAIRMAN ZIEMER: It means—

RAKESH VASHI: No, I mean for whatever reasons.

CHAIRMAN ZIEMER: The township has to review this motion and your proposal to make a final decision. And I would suggest you discuss those aspects with Mr. Bird and perhaps the church as well. . . . .

RAKESH VASHI: Now, do we have to come back here?

COMMISSIONER JARDON: No. You go to the Township Board. The same room.

CHAIRMAN ZIEMER: Once more.

RAKESH VASHI: Oh, okay.

COMMISSIONER JARDON: It's just the Township Board.

CHAIRMAN ZIEMER: Once more. Our record goes to the Township Board. You go to the Township Board with it.

RAKESH VASHI: Now,—

CHAIRMAN ZIEMER: And you go to present the case to the Township Board.

RAKESH VASHI: Now, given the site of the location is, what need to change to get a yes from this members?

CHAIRMAN ZIEMER: You're—we're done here.

RAKESH VASHI: Oh, okay.

COMMISSIONER JARDON: (unintelligible).

CHAIRMAN ZIEMER: What I'm saying is this recommendation goes to the Township Board with the reasons behind it, and you go to the Township Board and you present your case to the Township Board to attempt to get approval there.

COMMISSIONER JARDON:. And they (unintelligible) decision.

CHAIRMAN ZIEMER: And they will make the final decision.

COMMISSIONER JARDON: (Unintelligible).

RAKESH VASHI: Okay.

COMMISSIONER JARDON: We are sort of an advisory—well, we are an advisory body to the Township Board.

RAKESH VASHI: Okay.

COMMISSIONER JARDON: Okay? And we listen to the initial evidence and all the material and—

CHAIRMAN ZIEMER: (Interposing) I would—again, I would suggest you discuss that with Mr. Bird.

RAKESH VASHI: Okay.

CHAIRMAN ZIEMER: He can give you some advice—. . . .

ADITI VASHI: I just have one quick question. If the church is ready to work, like instance with the day care and with us, and work things out, would that help? I mean because the church is open to—

CHAIRMAN ZIEMER: I don't know.

ADITI VASHI:—all the suggestions.

CHAIRMAN ZIEMER: Oh, no. (unintelligible colloquy). Because its up to the Township Board.

Transcript of November 9, 1999 Public Hearing, at 81–84, attached as Plaintiffs' Exhibit D. The minutes of the November 9, 1999 hearing reflect that a motion "to forward to the Township Board a recommendation to deny [plaintiffs'] site plan and special use approval of a day care facility" carried by a vote of 5–2. Defendants' Exhibit F. In a November 11, 1999 letter, Planning Director Bird explained:

> The Planning Commission at its meeting on November 9, 1999 recommended denial to the Township Board on your request for a day care center at Holy Spirit Lutheran Church.

Defendants' Exhibit F.

On November 17, 1999, Church Pastor. Quatman wrote to the Township Board stating:

> "[The Church] does not feel that we can pursue hosting a day care program in our facility at this time. Our Church Council does not want to do anything that would put us at odds with West Bloomfield Township. Because the Planning Commission has recommended denial of the petition brought by Mr. and Mrs. Vashi to open a day care in our building we feel we cannot move forward with our plans without creating more hard feelings and negative publicity in the township . . . . .
>
> We at Holy Spirit Lutheran Church did not expect the Township Planning Commission to recommend denial of the Vashi's petition to open a day care. We regret that we are unable to pursue hosting a day care program at this time due to the Planning Commission's decision to recommend denial of the Vashi's petition."

Defendants' Exhibit G. One day later, plaintiff Aditi Vashi wrote to the Township Board:

> As per the attached letter from Rev. Bruce Quatman—I have decided to honor church's decision and wish to withdraw my petition. I would kindly request you to refund the escrow amount I have deposited with the city.

*Id.*

Construing the pleadings and evidence in a light most favorable to the plaintiffs, it is beyond all reasonable dispute that the Planning Commission's November 9, 1999 recommendation that the Township Board deny the plaintiffs' site plan and special use application was not a final decision regarding the application of the Township zoning ordinances to the plaintiffs' daycare proposal. With respect to site plan review under Sec. 26–40, the recommendation would have become the Township's final decision if the had plaintiffs failed to file a written request for review by November 30, 1999, being 21 days after the November 9, 1999 Planning Commission recommendation. Plaintiffs withdrew their petition on November 18, 1999, however, at a time when the Township Board enjoyed express authority to "affirm, modify or reverse any decision of the planning commission." Zoning Ordinance 26–40(a)(1)(j). Put differently, the Board was empowered to participate in the final site plan decision making process through November 30, 1999, well after plaintiffs' withdrew their proposal.

■ Likewise, with respect to special use review under Sec. 26–73, any special use decision by the planning commission was expressly "subject to final approval by the township board." Zoning Ordinance 26–73(1). Plaintiffs reference to the wording in Sec 26–73 that special use approval is subject to "review and approval of the site plan by the planning commission" is unavailing in that Sec. 26–40, governing site plan review, expressly states that the Township Board is authorized to "affirm, modify or reverse any decision of the plan-

ning commission" unless the planning commission decision becomes a final decision when the applicant fails to seek Board review within 21 days. Plaintiffs' interpretation of Sec. 26–40 and Sec. 26–73 would lead to the absurd result that, even if the Board reversed the Planning Commission's denial of a site plan application, and the Board was prepared to give its final approval to a related special use application, the Board would not be authorized to grant the special use application due to the Planning Commission's initial, reversed, site plan denial recommendation. Michigan courts depart from literal statutory interpretations where such an absurdity results. *See Salas v. Clements,* 399 Mich. 103, 109, 247 N.W.2d 889 (1976); *Kalinoff v. Columbus Township,* 214 Mich.App. 7, 10, 542 N.W.2d 276 (1995) (recognizing that the rules of statutory construction apply in interpreting zoning ordinances).

In addition, the actual history of the plaintiffs' daycare site plan and special use application also supports only one reasonable conclusion—that the Planning Commission was only a recommending body, and that the Township Board would make the final decision as to the plaintiffs' application. Plaintiffs were told repeatedly at the November 9, 1999 hearing that the Township Board renders final decisions on site plan and special use applications. The Planning Commission passed a motion to forward a *recommendation* to the Board that plaintiffs' daycare application be denied. Planning Director Bird communicated to the plaintiffs in his November 11, 1999 letter that the Planning Commission had "*recommended* denial to the Township Board." Defendants' Exhibit F (emphasis added). Church Pastor Quatman recognized that the Planning Commission had "*recommended* denial of the petition." Defendants' Exhibit G (emphasis added). Finally, plaintiffs communicated to the Township that they wished to *withdraw*

their petition consistent with the Church's decision not to host a day care program. Construing the pleadings and evidence in a light most favorable to the plaintiffs, the Planning Commission's November 9, 1999 decision was not a final decision of the Township as a matter of law. *Winningham,* 42 F.3d at 984. On November 9, 1999, the Township had not arrived at a definitive position on the plaintiffs' daycare proposal, the Township had not inflicted an injury on the plaintiffs, and only subsequent resort to the Township Board would have resulted in a conclusive Township determination. Plaintiff has produced no evidence to contradict the Township's own interpretation and practice in relation to applicable ordinances.

■ Plaintiffs' argument that it would have been futile to proceed with their proposal to the Township Board misses the point that, "[b]y finality we mean that the actions of the [township] were such that further administrative action ... would not be productive." *Bigelow,* 970 F.2d at 158. Here, plaintiffs decided to withdraw their petition based on the Church's withdrawal of support for hosting a daycare center. Plaintiffs' allegation that Pastor Quatman believed Township Board Chairman Jeddy Hood sided with the Planning Commission's decision is insufficient to support a claim of futility. *See Hammond v. Baldwin,* 866 F.2d 172, 177 (6th Cir. 1989) (finding that cases supporting actionable procedural due process claims based on bias and resulting futility involve one of two characteristics: a direct pecuniary benefit gained by the decision-maker, or a violation of the principle of separation of powers).

## V. Conclusion

Defendants' motion for dismissal/summary judgment, construed as a motion for

summary judgment, is hereby GRANTED. Plaintiffs' federal claims as alleged in Counts I–III are hereby DISMISSED, without prejudice, for lack of federal subject matter jurisdiction. Plaintiffs' state claim of gross negligence as alleged in Count IV is hereby DISMISSED, without prejudice, pursuant to 28 U.S.C. § 1367(c)(3). The court declines exercising jurisdiction over the remaining state law claim. *See* 28 U.S.C. § 1367(c)(3).

SO ORDERED.