**LASALLE BANK NATIONAL ASSOCIATION, in its capacity as Trustee for Nomura Depositor Trust ST I Commercial Pass–Through Certificates series 1998–ST I, Plaintiff,**

v.

**WONDERLAND SHOPPING CENTER VENTURE LIMITED PARTNERSHIP, a Michigan limited partnership, Wonderland, Inc., a Michigan corporation, Schostak Brothers & Company, a Michigan corporation, Robert I. Schostak, David W. Schos-**

---

tak, Mark S. Schostak, Robert S. Sher, as Trustee of the Robert S. Sher Revocable Living Trust dated May 14, 1982, Nat Korash, Max Madorsky, James R. Bohannon, SF Properties LLC, a Michigan limited liability company, Odgen Entertainment, Inc., a Delaware corporation, Ogden Services Corporation, a Delaware corporation, and Odgen Corporation, a Delaware corporation, Defendants.

No. 01–CV–73507–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Sept. 13, 2002.

Robert P. Hurlbert, Dickinson Wright, Bloomfield Hills, MI, Eric S. Rosenthal, Barris, Sott, Detroit, MI, Kathleen A. Lang, Dickinson Wright, Detroit, MI, for LaSalle Bank, N.A., in its capacity as Trustee for Nomura Depositor Trust ST I Commercial Pass–Through Certificates Series 1998–ST I, plaintiff.

I.W. Winsten, Honigman, Miller, Detroit, MI, for Wonderland Shopping Center Venture, L.P., defendant.

William A. Sankbeil, Kerr, Russell, Detroit, MI, for Ogden Entertainment, Incorporated, defendant.

## MEMORANDUM OPINION AND ORDER

HOOD, District Judge.

This matter comes before the Court on Defendants Wonderland Shopping Center Venture Limited Partnership, Wonderland, Inc., Schostak Brothers & Company, Inc., Robert I. Schostak, David W. Schostak, Mark S. Schostak and SF Properties LLC's (collectively the "Wonderland Defendants") Motion pursuant to Rules 12(b)(6) and 56 to Dismiss and/or for Summary Judgment. This Motion, submitted in lieu of an Answer to the Complaint in this case, was filed on November 21, 2001. By order of this Court, Plaintiff LaSalle National Bank ("LaSalle") filed a Response to the Wonderland Defendants' Motion on January 30, 2002, and the Wonderland Defendants filed a Reply on February 15, 2002.[1] A hearing was held in this matter on April 8, 2002. For the following reasons, the Wonderland Defendants' Motion to Dismiss and/or for Summary Judgment is **GRANTED** pursuant to Rule 56(c).[2]

## I. FACTS

Plaintiff LaSalle alleges that on December 11, 1997, Defendant Wonderland Shopping Center Venture Limited Partnership ("Wonderland Shopping Center") entered into a loan transaction with LaSalle's predecessor in interest, Nomura Asset Capital Corporation (hereinafter "NACC") pursuant to which Wonderland Shopping Center borrowed from NACC the sum of $41,650,000 (hereinafter "Loan") for its shopping center pursuant to the terms of a written agreement ("Loan Agreement") and related loan documentation (collectively "Loan Documents").[3] *See* Compl. at ¶ 14. The NACC assigned the Loan to its affiliate Nomura Depositor Trust ST I ("Trust"), retaining certain rights to direct its affiliate with respect to such Loan. *Id.* at ¶ 15.

Nomura Depositor Trust ST I established the Trust with LaSalle acting in the capacity as Trustee and assigned the Loan to the Trust. *Id.* at ¶ 16. Subsequently, NACC's rights regarding the Loan, as well as NACC's interest in its affiliate Trust, were sold to CDC Mortgage Capital, Inc. ("CDC") on August 2, 1999. *Id.* at ¶ 17. LaSalle continued to act as Trustee for the Trust, which continued to be the holder of the Loan. The Loan Agreement and Loan Document are currently in the possession of LaSalle and the Wonderland Defendants. *Id.* at ¶ 14.

Of particular importance to this lawsuit is § 5.1(t) of the Loan Agreement, which states in pertinent part: "Borrower ... (iii) shall not collect any of the rents [from shopping center tenants] more than one (1) month in advance (other than security deposits)." *See* Wonderland Defs.' Br. at Ex. A. Similarly, a duly recorded "Assignment of Rents" agreement entered into between the Wonderland Defendants, dated Decem-

---

1. The Wonderland Defendants filed a "Supplemental Brief Citing Recent New Authority in Support of their Motion to Dismiss and/or for Summary Judgment" on March 27, 2002. Because the Wonderland Defendants did not seek leave for the Court to file this "supplemental brief," the Court will not consider it in connection with the Wonderland Defendants' Motion to Dismiss and/or for Summary Judgment. *See Best v. Dante Gentilini Trucking,* *Inc.,* 778 F.Supp. 360, 361 n. 1 (E.D.Mich. 1991).

2. Plaintiff voluntarily dismissed Defendant James R. Bohannon from this action on December 28, 2001.

3. The shopping center is located in Livonia, Michigan.

ber 11, 1997, disallows Wonderland Shopping Center from collecting more than one monthly installment of rent in advance from tenants. *See* Compl. at ¶ 21 (referring to the Assignment of Rents agreement attached as Ex. 1). Section 1.1 of the Loan Agreement states that:

> "Rents" shall mean, with respect to the Property, all rents, rent equivalents, moneys payable as damages or in lieu of rent or rent equivalents, royalties (including all oil and gas or other mineral royalties and bonuses), income, receivables, receipts, revenues, deposits (including security, utility and other deposits), accounts, cash, issues, profits, charges for services rendered, and other consideration of whatever form or nature received by or paid to or for the account of or benefit of [Wonderland Shopping Center] or its agents or employees from any and all sources arising from or attributable to the Property, including all receivables, customer obligations, installment payment obligations and other obligations now existing or hereafter arising or created out of the sale, lease, sublease, license, concession or other grant of the rights to use and occupancy of the Property and proceeds, if any, from business interruption or other loss of income insurance.

Wonderland Defs.' Br. at Ex. A; *see also* Br. in Supp. of Pl.'s Resp. to Wonderland Defs.' Motion for Dismissal and/or Summ.J. at 6 n. 4 (hereinafter referred to as "Pl.'s Resp.Br.").

Section 1(c) of the Assignment of Rents agreement contains a substantially similar definition of "Rents." The Assignment of Rents agreement further provides that "[a]ny Rents held or received by [Wonderland Shopping Center] at any time shall be held or received by [Wonderland Shopping Center] as trustee for the benefit of [LaSalle] only." *See* Compl. at ¶ 37 (citing § 3(c) of the Assignment of Rents agreement). Section 3(c) continues by stating that any Rents so held "shall immediately be deposited directly into the Collection Account in accordance with the terms of the Cash Collateral Account Agreement." *Id.*

Section 2.6 of the Loan Agreement also established a protocol regarding the disposition of Rents. Specifically, Section 2.6 states:

> All Rents will be transmitted directly into an account maintained by Borrower but controlled by Lender at a bank selected by Borrower (The *"Collection Account Bank"*). [Wonderland Shopping Center] will establish a separate "A" account (the "A" Account) and "B" Account (the "B" Account) with the Collection Account Bank. [Wonderland Shopping Center] shall cause all Rents to be sent directly to the Collection Account Bank by tenants for deposit into the "A" Account. All other income or revenue received by Borrower or Manager in connection with the Property will be deposited into the "A" Account on the date of receipt. Until the earlier to occur of (i) the Optional Prepayment Date or (ii) an Event of Default or (iii) an Event of Default under the Senior Mezzanine Loan or (iv) the making of the Junior Mezzanine Loan (the occurrence of any of the foregoing herein referred to as a *"Cash Trap Event"*), the Collection Account Bank will transfer property receipts that are cleared on a daily basis from the "A" Account to the "B" Account which shall be an account not subject to any restrictions and under the sole control of Borrower. Upon the occurrence of any Cash Trap Event, the Collection Account Bank will transfer property receipts that are cleared on a daily basis to the Cash Collateral Account Bank for deposit into the Cash Collateral Account.

*See* Compl. at ¶ 36; *see also* Pl.'s Resp.Br. at 8; Wonderland Defs.' Br. at Ex. A.

On July 10, 1998, Defendant Ogden Entertainment, Inc. ("Ogden Tenant") entered into a lease with Wonderland Shopping Center as landlord ("Ogden Lease"). *See* Br. in Supp. of Wonderland Defs.' Mot. pursuant to Rules 12(b)(6) and 56 to Dismiss and/or for Summ.J. at 2 (hereinafter referred to as "Wonderland Defs.' Br."). Under the Ogden Lease, Ogden Tenant was to operate a food court in Wonderland Shopping Center for a twelve (12) year term, ending January 31, 2011. *See* Compl. at ¶ 24. Defendant Ogden Services, Inc. ("Ogden Guarantor") executed a Guaranty on behalf of Ogden Tenant for all of Ogden Tenant's obligations under the Ogden Lease. *See* Compl. at ¶ 25; *see also* Wonderland Defs.' Br. at 2.

According to LaSalle, on March 10, 1998, Wonderland Shopping Center, Ogden Tenant and LaSalle's predecessor in interest (NACC as lender), entered into a duly recorded agreement entitled: Subordination, Non–Disturbance and Attornment Agreement ("Subordination Agreement"). The Subordination Agreement, attached as Exhibit 2 to the Complaint, states in pertinent part:

> Tenant agrees that no prepayment of rent or additional rent due under the Lease more than one month in advance of its due date and no amendment, modification, surrender or cancellation of the lease, and no waiver or consent by landlord under the terms of the lease* (*as to any material term thereof) shall be binding upon or as against lender, as holder of the mortgage, and as landlord under the lease if it succeeds to that position, unless consented to in writing by lender. Tenant further agrees with lender that tenant will not voluntarily subordinate the lease to any lien or encumbrance without lender's prior written consent.

*See* Subordination Agreement at ¶ 5.

LaSalle claims that Defendant Schostak Brothers and Company, in its capacity as Managing Agent for Wonderland, learned that Ogden Tenant contemplated vacating the food court in the Wonderland Shopping Center, *see* Compl. at ¶ 7, and refers to a portion of a letter written by Defendant Robert I. Schostak to Ogden Tenant wherein Mr. Schostak states: "Should Ogden close, the landlord's damages will include millions of dollars in damages beyond the over $6,000,000 in rent and other charges due for the balance of the lease term." *See id.* at ¶ 27 (referring to Letter of October 4, 1999, at Compl. at Ex. 3).

In May of 2000, "Defendant David W. Schostak wrote a letter to [CDC], the controlling affiliate of the Trust ... requesting approval of the termination of the Ogden Lease and retention of a multi-million dollar payment in connection therewith which Ogden Tenant proposed to make to settle its obligations under the Ogden Lease for unpaid rent and other charges." *Id.* at ¶ 28. CDC, on behalf of the Trust, responded by a letter dated May 18, 2000, stating:

> Subject to reaching an agreement with you regarding the use of the funds, CDC would recommend to CapMark Services, L.P. ("CapMark"), as agent for the FA-SIT Trust which currently holds the Wonderland loan, that the immediate payment of the lease termination fee totaling, $2,500,000 and the other terms and conditions in Mr. Felner's May 4, 2000 letter would be acceptable. We assume, of course, that these funds will be held in reserve by CapMark until such time as CDC and your firm can complete our discussions regarding modifications of the Wonderland Mall Loan.

*See id.* at ¶ 29 (referring to Compl. at Ex. 4). Schostak Brothers & Company did not respond to this letter. *Id.* at ¶ 30.

LaSalle alleges that, on or about August 1, 2000, Wonderland Shopping Center and Ogden Tenant, Ogden Guarantor and Ogden Corporation [4] (the parent company of Ogden Tenant and Ogden Guarantor, hereinafter referred to as "Ogden Parent") entered into a "Lease Termination Agreement," which required the Ogden Defendants to transfer $1,750,000 by wire to a bank account owned by the Wonderland Shopping Center. *Id.* at ¶ 31. The bank account to which these funds were transferred was "a different Wonderland bank account than the account into which Ogden Tenant's lease payments were normally made." *Id.* The Lease Termination Agreement also required Ogden Guarantor to execute a promissory note for $250,000 to Wonderland Shopping Center. *Id.* Ogden Parent guaranteed the promissory note. *Id.* It is undisputed that the Lease Termination Agreement was executed without notice to and the consent of La-Salle. LaSalle alleges that the action was intended to place these funds out of La-Salle's reach and was deliberate on the part of Defendants. *See id.* at ¶ 32.

According to LaSalle, Defendant David W. Schostak "acknowledged to [LaSalle's] affiliate that [Wonderland Shopping Center] had in fact received a large payment from Ogden Tenant in consideration for the termination of the Ogden Lease." *Id.* at ¶ 33. LaSalle claims that Wonderland Shopping Center and Defendant David W. Schostak attempted to rationalize these actions, informing LaSalle's affiliate by letter that "[t]he payment made by Ogden in connection with the termination was a lease termination payment, not prepaid rent, and did not violate any provisions of the Loan Agreement." *Id* (referring to

December 12, 2000 Letter, Compl. at Ex. 6). In late December 2000, LaSalle requested further information regarding the transaction and discovered that "a good deal if not all of the consideration paid by Ogden Tenant to terminate its lease had been transferred to Wonderland Partners." *See id.* at ¶ 34.

On September 14, 2001, LaSalle filed the instant action in federal court, based on diversity jurisdiction. Counts I, II, and III are each against the Wonderland Defendants. Count I of the Complaint seeks a Declaratory Judgment, Count II is an "Action in Equity for Accounting and Imposition of Constructive Trust," and Count III alleges damages under Michigan's fraudulent conveyance law. Count IV is the sole action against the Ogden Defendants.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for a motion to dismiss for failure to state a claim upon which relief can be granted. This type of motion tests the legal sufficiency of the plaintiff's Complaint. *Davey v. Tomlinson,* 627 F.Supp. 1458, 1463 (E.D.Mich.1986). A court takes the factual allegations in the Complaint as true when evaluating the propriety of dismissal under Fed.R.Civ.P. 12(b)(6). *Ziegler v. IBP Hog Market, Inc.,* 249 F.3d 509, 512 (6th Cir.2001); *Hoeberling v. Nolan,* 49 F.Supp.2d 575, 577 (E.D.Mich. 1999). Further, the court construes the complaint in the light most favorable to the plaintiff, and determines whether it is beyond a doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *Varljen v. Cleveland Gear Co., Inc.,* 250 F.3d 426, 429 (6th Cir.2001).

---

4. Defendants Ogden Tenant, Ogden Guarantor and Ogden Corporation are collectively referred to as "Ogden Defendants" hereinafter.

If matters outside the pleading are presented in a Fed.R.Civ.P. 12(b)(6) motion and considered by the court, the motion shall be treated as one for summary judgment under Fed.R.Civ.P. 56(b) and disposed of as provided thereunder. *Talley–Bey v. Knebl,* 168 F.3d 884, 885 (6th Cir. 1999); *Vashi v. Charter Township of West Bloomfield,* 159 F.Supp.2d 608, 612 (E.D.Mich.2001). Rule 56(c) states that summary judgment should be entered only where "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Moreover, the court need not accept as true legal conclusions or unwarranted factual inferences. *Hoeberling,* 49 F.Supp.2d at 577.

Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. 2548. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Id.* A court must look to the substantive law to identify which facts are material. *See Wonderland Shopping Ctr. Venture Ltd. P'Ship v. CDC Mortgage Capital, Inc.,* 274 F.3d 1085, 1092 (6th Cir.2001). Michigan contract law applies to the instant action.

## III. ANALYSIS

The Wonderland Defendants argue that LaSalle's action should be dismissed for five reasons. The first argument asserted by the Wonderland Defendants is that La-Salle's suit is barred by the doctrine of *res judicata.* Because the Court agrees with this contention, the Court does not address Defendants other arguments.[5]

On January 4, 2001, Wonderland Shopping Center (along with other borrowers who had separate loans and who later settled) filed a declaratory judgment action with respect to the Loan Agreement in which Wonderland Shopping Center claim that it was not in default of its obligations under the Loan Agreement (the "Prior Action"). The Wonderland Defendants argue that the Prior Action precludes La-Salle's instant suit based on the doctrine of *res judicata* or claim preclusion. *See*

---

**5.** Wonderland Shopping Center also argues that: (1) it had the express right under the parties' Loan Agreement to terminate the Ogden lease without LaSalle's consent; (2) the economic loss doctrine bars all of LaSalle's tort claims; (3) Defendants have no personal liability for any non-compliance with the Loan Agreement; and (4) LaSalle released every claim it asserts in the instant action in a 2001 release agreement. *See* Wonderland Defs.' Br. at 1.

Wonderland Defs.' Br. at 11–13; *see also* Compl. at ¶ 18.

■■■■■ Under this doctrine, a final judgment on the merits bars any and all claims by the parties or their privies based on the same cause of action, as to every matter actually litigated as well as every theory of recovery that could have been presented. *J.Z.G. Resources, Inc. v. Shelby Ins. Co.*, 84 F.3d 211, 214 (6th Cir.1996). For *res judicata* to apply the following four elements must be present: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action. *Kane v. Magna Mixer Co.*, 71 F.3d 555, 560 (6th Cir.1995).

A review of the Prior Action is appropriate before discussing the applicability of *res judicata* to this action. As stated previously, the Prior Action involved a declaratory action brought by Wonderland Shopping Center and various other borrowers initially only against CDC Mortgage Capital and CDC Depositor Trust ST I as defendants. Wonderland Shopping Center sought a declaration that the Loan Agreement required the lender to reduce or "resize" the Loan on its third anniversary date and that Wonderland Shopping Center had not defaulted by unilaterally reducing its payment due on January 11, 2001. The original defendants filed a counterclaim seeking a declaratory judgment that the resizing feature in the Wonderland Loan Agreement was discretionary with the lender.

■■■■ Wonderland Shopping Center filed an Amended Complaint adding LaSalle as a defendant in the Prior Action on March 21, 2001. *Id.* By adding LaSalle as a defendant, Wonderland Shopping Center attempted to enjoin LaSalle from concluding a statutory foreclosure by advertisement of the mortgage of Wonderland Shopping Center. *Id.* On May 4, 2001, this Court decided the Prior Action on cross motions for summary judgment and issued a Memorandum Opinion and Order. This Court entered Judgment in favor of defendants in the Prior Action on May 11, 2001, and the United States Court of Appeals for the Sixth Circuit affirmed this Court's decision on December 20, 2001. *See Wonderland Shopping Ctr. Venture Ltd. P'Ship*, 274 F.3d at 1098.

LaSalle admits that the present action flows from the same loan transaction at issue in the Prior Action, which involved LaSalle's "efforts, for the benefit of the Trust, to recover collateral (rents) pledged to secure the Loan." *See* Compl. at ¶ 19. LaSalle argues, however, that *res judicata* does not bar the present suit because the claims currently asserted were not brought by LaSalle in the Prior Action as LaSalle "filed no pleading in that action prior to entry of Judgment." *See id.* at ¶ 20. The Wonderland Defendants retort that "LaSalle could have easily asserted all of its claims against Wonderland Defendants in the Prior Action." *See* Wonderland Defs.' Br. at 12 This Court agrees with the Wonderland Defendants.

This Court is not persuaded by LaSalle's claim that *res judicata* does not preclude the instant suit because LaSalle never filed a pleading in the Prior Action. Although LaSalle claims that the Judgment in the Prior Action "was entered before LaSalle was required to plead," *see* Pl.'s Resp.Br. to Wonderland Defs. at 14, this is simply incorrect. This Court issued an Order requiring LaSalle to respond to the motion for summary judgment filed by the plaintiffs in the Prior Action by April 19, 2001. *See* Wonderland Defs.' Br. at Ex. U. LaSalle never did so. LaSalle cannot now be

heard to say that the *res judicata* is inapplicable based on this reason.

Additionally, LaSalle has admitted that it is in privity with CDC, which did file a Response to the plaintiff's motion for summary judgment in the previous action. *See* Aff. of Jon Brayshaw (stating that CDC "holds rights to direct, in several respects, the actions of Plaintiff LaSalle Bank National Association in its capacity as Trustee Nomura Depositor Trust ST I Commercial Pass—Through Certificates Series 1998–STI."). This fact is sufficient to bind LaSalle by the doctrine of *res judicata. See Becherer v. Merrill Lynch, Pierce, Fenner and Smith, Inc.,* 193 F.3d 415, 422 (6th Cir.1999) (stating that those who are *successors in interest* to a party will be bound by a judgment against that party, that a nonparty who *controlled* the original suit will be bound by the resulting judgment, and that a nonparty who is *adequately represented* by a party will also be precluded from relitigating the same issues. (Emphasis in original)). *Res judicata* is fully applicable.

It is undisputed that "[t]he Prior Action was between the same parties, and was filed in 2001 at a time when LaSalle *was fully aware* of the Ogden Lease Termination Agreement and that the [Wonderland Defendants] had deposited the termination fee into its 'B' Account." *See* Wonderland Defs.' Br. at 12 (emphasis in original). Nor is it disputed that the Prior Action and the instant action both involve "the exact same Loan Agreement and whether an Event of Default occurred thereunder." *See id.; see also* Wonderland Defs.' Br. at Ex. H, January 18, 2001 letter. The Wonderland Defendants note, and LaSalle does not dispute, that "LaSalle even referred to the Ogden Lease Termination Agreement at the oral argument on the dispositive motions."

LaSalle's argument that the Court's decision in the Prior Action was "confined to a limited set of issues" is meritless. LaSalle argues that, in the Prior Action, the Court addressed the issues of: (1) whether the Loan Agreement and related documents required the lender to resize the principal of the loan, or whether resizing was discretionary; and (2) whether LaSalle should be enjoined from proceeding with foreclosure of the Mortgage by advertisement. LaSalle further argues that

> Nothing in these questions implicated the provisions of the Loan Agreement dealing with the prepayment of rent, Wonderland's role as a trustee of the collateral for the Loan, the Ogden Defendants' obligations under the SDNA Agreement, or Wonderland's rights, under the guise of terminating a lease, to help itself and its partners to $2,000,000 in advance rent pledged to the lender.

*See* Pl.'s Resp.Br. at 14. Finally LaSalle contends that "[t]he *only* time Ogden's $2,000,000 payment was even mentioned was during oral argument in connection with the issue of whether Wonderland should be required to post a bond in the event the court were to grant injunctive relief." *See* Pl.'s Resp.Br. at 15 (emphasis in original).

LaSalle's focus on the issues decided by the Court, while not entirely inapposite, is not determinative, because the doctrine of *res judicata* provides that a final judgment on the merits bars any and all claims by the parties or their privies based on the same cause of action, as to every matter actually litigated *as well as every theory of recovery that could have been presented. J.Z.G. Resources, Inc.,* 84 F.3d at 214 (emphasis added). As stated earlier, LaSalle does not dispute that it knew at the time of the Prior Action that the Wonderland Defendants had entered into the Lease Termination Agreement over which LaSalle now sues. This Court concludes that LaSalle's claims regarding the Lease Termination Agreement against the Wonderland Defendants constitute "theories of recov-

ery that could have been presented" by LaSalle in the Prior Action. *Res judicata* required LaSalle to assert these claims at that time. This LaSalle did not do.

LaSalle's argument that the Wonderland Defendants cannot prevail on the third and fourth elements of *res judicata* is without merit. LaSalle contends that "[t]he issues raised in LaSalle's Complaint were not litigated in Wonderland Suit I, nor should they have been." *See* Pl.'s Resp.Br. at 17. Citing *Int'l Bhd. of Teamsters v. AT & T*, 1989 WL 78212 (July 17, 1989), LaSalle claims that there is no "identity of claims" between the instant suit and the Prior Action. Specifically, LaSalle claims that, in order for a Court to find a identity of claims, "there must be an identity of facts creating the right of action and evidence necessary to sustain each motion." *See* Pl.'s Resp.Br. at 17.

For support, LaSalle cites *Harris v. Ashley*, 165 F.3d 27 (6th Cir.1998) (unpublished disposition), wherein the Sixth Circuit stated that the doctrine of *res judicata* does not:

> "foreclose all possible or potential claims against any known potential defendant not brought within the first litigation." For instance, the prior claim will not preclude a claim which had not yet ripened at the time the prior claim was brought. Nor will a prior claim preclude a subsequent claim if the prior claim was based on matters which are "not germane to, implied in or essentially connected with the actual issues in the [second] case although they may affect the ultimate rights of the parties and might have been presented in the former action."

*Id.* at * 4 (citations omitted). The Court notes that *Harris* is an unpublished opinion and, therefore, not binding authority on this Court. *Harris* also construes Kentucky, as opposed to Michigan, law, and LaSalle has cited no authority declaring

that Michigan and Kentucky law coincide on this issue.

The Wonderland Defendants reply to LaSalle's arguments by contending that the Prior Action and the instant suit "both involve the same issue—whether Wonderland was in default of its obligations under the Loan Agreement and related documents." *See* Defs.' Reply Br. at 1. The Wonderland Defendants cite *Sanders Confectionery Prod., Inc. v. Heller Fin.*, 973 F.2d 474, 484 (6th Cir.1992) for the proposition that the "identity of claims" element of *res judicata* is "easily satisfied where both suits concern the same loan." *See* Wonderland Defs.' Reply Br. at 1. The Wonderland Defendants also cite *J.Z.G. Resources, Inc.*, 84 F.3d at 215 to support their contention that the "identity of claims" requirement is met "where both suits arise out of the same transaction or a series of connected transactions." *See* Wonderland Defs.' Reply Br. at 2. This Court agrees with these assertions.

In *Sanders Confectionery Prod., Inc.*, the Sixth Circuit concluded that the plaintiffs in that case:

> incorrectly contend[ed] that because these particular claims were not raised in the prior action, no identity of claims exists ... All of the claims in this action are based on Heller's behavior in making and administering its loan to FSI. The bankruptcy considered this same behavior by Heller in its numerous rulings on the validity of Heller's claims against FSI. Therefore, these claims are identical and all of the elements of *res judicata* have been met.

973 F.2d at 484.

In *J.Z.G. Resources, Inc.*, a developer sued its insurer alleging damages with respect to a development. After litigating a claim with respect to a road, the developer filed a second suit for injury to other property. In finding the claim barred by *res judicata*, the Sixth Circuit declared:

The Restatement (Second) of Judgments describes the doctrine of res judicata as extinguishing "all rights of the plaintiff to remedies against the defendant with respect to all or any part or the transaction, or series of connected transactions, out of which the action arose." RESTATEMENT (SECOND) JUDGMENTS § 24 (1982) ... It is clear that both types of damage arise out of the same transaction and that plaintiff could have presented evidence of damage to other property as an alternate ground for recovery. Therefore, we conclude that the district court correctly ruled that plaintiff's present action is precluded on the basis of res judicata.

84 F.3d at 214.

Here, all of the claims in the present suit are based on the Wonderland Defendants alleged default of the Loan. In the Prior Action, this Court considered the Wonderland Defendants' actions in determining that a default had occurred. The Court based its decision, in part, on the January 18, 2001, letter proffered as evidence in this case. The January 18 letter claims five (5) "Events of Default" had occurred under the Loan Agreement by the date of the letter. This Court based its decision on only one of the alleged defaults listed in the letter. *See Macomb Mall Associates Limited Partnership v. CDC Mortgage Capital, Inc.*, Case No. 01–70056 at 20 ("This Court finds that as a result of Plaintiff's failure to pay the required loan payment on January 11, 2001, an Event of Default occurred.").

The fact that the Court relied on only one of the defaults listed in the January 18, 2001 letter does not render *res judicata* inapplicable, because, as the Wonderland Defendants correctly note, the other alleged defaults listed in the January 18 letter, including the Lease Termination Agreement entered into between Wonder-

land Shopping Center and Ogden Tenant, were "alternative theor[ies] of default that [were] raised and could have been pursued in the [Prior Action]." *See* Wonderland Defs.' Reply Br. at 2. Although LaSalle claims that it did not have an opportunity to litigate this claim, *see* Pl.'s Resp.Br. at 18, it is simply incorrect. Plaintiff's claims against the Wonderland Defendants are barred by *res judicata* and must be dismissed.

## IV. CONCLUSION

This Court concludes that Plaintiff's claims against the Wonderland Defendants are barred by *res judicata* and must be dismissed.

Accordingly,

**IT IS HEREBY ORDERED THAT** Defendants Wonderland Shopping Center Venture Limited Partnership, Wonderland, Inc., Schostak Brothers & Company, Inc., Robert I. Schostak, David W. Schostak, Mark S. Schostak and SF Properties LLC's Motion pursuant to Rules 12(b)(6) and 56 to Dismiss and/or for Summary Judgment (**Docket # 7, filed November 21, 2001**) is **GRANTED.**