Clifford BIGELOW, License No. 401; Brown Fisheries, License No. 404; Casey Fisheries, License No. 405; Gerald L. Moore, License No. 412; Paul H. Brown, License No. 417; Cedarville Fish Company, License No. 420; Lamb Fishery, Inc., License No. 425; John Leclair, License No. 430; Robert Chartrand and Christine Chartrand, License No. 433; Shirley A. Wilcox, Jeffrey M. Wilcox, and Daniel Wilcox, License No. 447; Clarence Brooks and Winifred Brooks, License No. 500; Donald R. Cole, License No. 503; James Kenwabikise, Paul David Kenwabikise Estate, and Stephen Kenwabikise, License No. 516; Francis E. Martin and Jacqueline L. Martin, License No. 517; John Cross, Jr. and Jerry Ranville, License No. 602, Plaintiffs,

Leonard Dutcher Fishery, Inc., License No. 408; Roger Wollangur and Raymond Halberg, License No. 431; Harold W. Sellman, License No. 442; Melvin R. Sellman, License No. 443; Wayne Wachter and Mary Wachter, License No. 445; Our Son's Fisheries, License No. 448; Frazier Fish Corporation, License No. 460; Baker Fishery, Inc., License No. 461; L & H Fishery, License No. 501; Ralph Cross, Jr. and Ralph Cross, Sr., License Nos. 505 and 518, Plaintiffs–Appellants,

v.

MICHIGAN DEPARTMENT OF NATURAL RESOURCES and David F. Hales, Director of the Michigan Department of Natural Resources, Defendants–Appellees.

No. 90–1091.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 7, 1992.

Decided July 14, 1992.

Dale W. Rhoades (argued & briefed), Rhoades, McKee, Boer, Goodrich & Titta, Grand Rapids, Mich., Charles M. Brown, Brown & Brown, St. Ignace, Mich., for Clifford Bigelow, et al.

Charles M. Brown, Brown & Brown, St. Ignace, Mich., for Leonard Dutcher Fishery, Inc., et al.

Thomas J. Emery, Kevin T. Smith, Asst. Attys. Gen. (argued & briefed), Natural Resources Div., Lansing, Mich., for Michigan Dept. of Natural Resources, David F. Hales.

Before NELSON and BOGGS, Circuit Judges, and KRUPANSKY, Senior Circuit Judge.

BOGGS, Circuit Judge.

This case results from complications caused by the federal government's attempt to restore aboriginal fishing rights to Michigan Indians. A group of commercial fishermen challenged the State of Michigan's support of a plan, approved by a federal court, by which Indians were given exclusive rights to fish in certain Michigan waters. The district court granted the defendants' motions for summary judgment and dismissal, and the plaintiffs appeal to this court. We dismiss this case because no federal issues are ripe for review.

I

In 1973, the United States brought suit asking that Michigan be enjoined from interfering with the rights of Indians to fish in the Great Lakes, as confirmed by trea-

ties between certain Indian tribes and the federal government. In an opinion dated May 7, 1979, the district court ruled in favor of the United States, announcing the following conclusion:

> Because the right of the Plaintiff tribes to fish in ceded waters of the Great Lakes is protected by treaties of the Ottawa and Chippewa Indians with the United States, that right is preserved and protected under the supreme law of the land, does not depend on State law, is distinct from the rights and privileges held by non-Indians and may not be qualified by any action of the state or its agents nor regulated by the state or its agents except as authorized by Congress.

*United States v. Michigan*, 471 F.Supp. 192, 281 (W.D.Mich.1979). Michigan appealed to this court, which generally upheld the district court's decision, although it recognized Michigan's power to regulate Indian fishing under certain conditions. *United States v. Michigan*, 653 F.2d 277, 279 (6th Cir.), *cert. denied*, 454 U.S. 1124, 102 S.Ct. 971, 71 L.Ed.2d 110 (1981).

As a result of this decision, in the fall of 1983, three Indian tribes filed a motion in federal district court to allocate fishing resources between themselves and Michigan. Soon afterward, several other groups, including a large number of state-licensed commercial fishermen (the "Ruleau Petitioners"), sought to intervene as party defendants; the district court allowed these groups to participate as litigating *amici curiae*. The district court then appointed a special master to supervise pre-trial matters and attempt to facilitate a settlement. After lengthy negotiations, an Agreement for Entry of Consent Order was signed on March 28, 1985 by representatives and attorneys for the parties and all *amici* except for the Ruleau Petitioners. The Ruleau Petitioners chose not to participate in the negotiations; instead, they sought a compensation agreement with Michigan to pay displaced commercial licensees. Meanwhile, one of the tribes rejected the Agreement and renewed its motion for allocation. On May 31, 1985, after a trial in which the Ruleau Petitioners chose not to participate, the district court entered an order adopting the allocation plan outlined in the Agreement, to be in effect for fifteen years. This plan prohibited state-licensed commercial fishers from operating in large parts of treaty-ceded waters.

In January 1986, the Department of Natural Resources presented a "Summary of Compensation Proposal for Lake Michigan," which listed a proposed total compensation of $8,668,410 to seventeen licensees being displaced in northern Lake Michigan. Further negotiations between the licensees and the Department of Natural Resources eventually resulted in a "mutually acceptable package" in March 1986. Under this proposal, Michigan would buy a fourteen-year life certain annuity that would result in a total proposed adjustment of $14,459,552, thus settling disputes with licensees from Lake Michigan, Lake Superior, and Lake Huron. In accord with this proposal, Michigan made partial payments to displaced licensees in March 1986 and on January 10, 1987. However, each partial payment recipient acknowledged "that payment of these funds impose[s] no obligation for future payments by the State of Michigan." Michigan never paid the total compensation package to the licensees, evidently because of a line-item veto by the governor.

Soon after this veto, on September 4, 1987, plaintiffs holding twenty-six once-useful commercial fishing licenses brought suit against Michigan, through its agent, the Michigan Department of Natural Resources, and the Department's Director, David F. Hales, in federal district court. The plaintiffs alleged a taking without just compensation, in violation of the federal and state constitutions and 42 U.S.C. § 1983; violation of their rights of equal protection; breach of two contracts, by which they meant the two compensation proposals; and violation of the Elliott–Larsen Civil Rights Act, Mich. Comp. Laws Ann. §§ 37.2101 *et seq.* Settlements were ultimately reached with most of the plaintiffs, leaving only eleven licensees represented before the court.

The defendants moved for summary judgment pursuant to Fed.R.Civ.P. 56(c) on

the claims of due process violation, equal protection violation, improper taking of property, and breach of contract. They also moved for dismissal for failure to state a claim under Fed.R.Civ.P. 12(b)(6) on the claims under § 1983 and the Elliott–Larsen Civil Rights Act. They also requested the court to grant fees and costs reasonably incurred in defending the action. The district court granted the defendant's motions under Rules 56(c) and 12(b)(6), but denied their motions for costs. *Bigelow v. Michigan Dep't of Natural Resources*, 727 F.Supp. 346 (W.D.Mich.1989). The eleven licensees appeal to this court, although they do not raise their § 1983 or Elliott–Larsen claims.

## II

All of the plaintiffs once possessed useful commercial fishing licenses, pursuant to Michigan law. Such licenses may fix the amount of fish to be taken by species and kind, and may designate the areas in which the licensee will be allowed to fish. Mich. Comp.Laws Ann. § 308.1b(2). Thus, once an area was granted exclusively to the Indians, those fishermen licensed to fish in that area by the state could no longer do so. They kept their licenses, but their quota of fish was reduced to zero. The plaintiffs had possessed their licenses for some time, and the licenses had always been renewed automatically each year. According to Michigan law,

> [a]ny licensee presently licensed at the time the section becomes effective [November 15, 1968] *shall have the right* to have his license renewed from year to year ... if such licensee continues to meet the qualifications set forth in this section and the qualifications specified in any rules promulgated under this section regardless of the determination of the number of licenses to be issued hereunder.

Mich.Comp.Laws Ann. § 308.1b(5) (emphasis added). Michigan has never alleged that the plaintiffs violated any aspects of the Michigan's Commercial Fishing Law. The plaintiffs contend, therefore, that Michigan took their property right in the fishing licenses.

However, before addressing the merits of any appeal, we must be convinced that the claim in question is ripe for review, even if neither party has raised this issue. "The jurisdiction of federal courts is limited by Article III of the United States Constitution to consideration of actual cases and controversies, therefore federal courts are not permitted to render advisory opinions." *Adcock v. Firestone Tire and Rubber Co.*, 822 F.2d 623, 627 (6th Cir. 1987). "Ripeness is more than a mere procedural question; it is determinative of jurisdiction. If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed. This deficiency may be raised sua sponte if not raised by the parties." *Southern Pac. Transp. Co. v. City of Los Angeles*, 922 F.2d 498, 502 (9th Cir.1990), *cert. denied*, —— U.S. ——, 112 S.Ct. 382, 116 L.Ed.2d 333 (1991) (citation omitted).

In *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), the Supreme Court declared that "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." 473 U.S. at 195, 105 S.Ct. at 3121. Unless the plaintiff has pursued state remedies, his case is not ripe because "the State's action ... is not 'complete' until the State fails to provide adequate compensation for the taking." *Ibid.* (footnote omitted). In *Williamson*, the Supreme Court rejected a taking claim because the plaintiff had "not shown that the [state's] inverse condemnation procedure is unavailable or inadequate, and until it has utilized that procedure, its taking claim is premature." 473 U.S. at 197, 105 S.Ct. at 3122.

Because neither party addressed this issue, we asked them to submit letter briefs on the question of whether the taking claim was ripe for review. A review of the record and those letter briefs indicates

that the plaintiffs have not pursued an inverse condemnation remedy in the Michigan courts, although such a remedy could be available in this case. Michigan has long recognized the doctrine of inverse condemnation. *See, e.g., Heinrich v. City of Detroit*, 90 Mich.App. 692, 282 N.W.2d 448 (1979). Furthermore, "under Michigan law a 'taking' of private property for public use is not restricted to cases involving absolute conversion of private property, but also includes cases where the value of the property is destroyed by the action of the government or where the owner is excluded from use or enjoyment of his property or from any of the appurtenances thereto." *Blue Water Isles Co. v. Department of Natural Resources*, 171 Mich.App. 526, 431 N.W.2d 53, 58 (1988). In fact, this court recently rejected a taking claim for this very reason: "Since [the plaintiff] has not attempted to use Michigan's inverse condemnation procedure or establish the inadequacy of the procedure in these circumstances, his claim of taking without just compensation, if that is indeed his claim, is not ripe and cannot be considered by this court." *Macene v. MJW, Inc.*, 951 F.2d 700, 704 (6th Cir.1991). We adopt the same reasoning in this case, and hold that the plaintiffs' federal taking claim is not ripe for review.

## III

The plaintiffs also contend that their federal equal protection rights, as guaranteed by the fourteenth amendment, have been violated. However, this court recently recognized that "[t]he Seventh and Ninth Circuits have held that the finality analysis applied in [*Williamson County Reg. Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985)] is equally applicable to equal protection claims." *Bannum v. City of Louisville*, 958 F.2d 1354, 1362 (6th Cir. 1992); *see Unity Ventures v. Lake County*, 841 F.2d 770, 775 (7th Cir.), *cert. denied*, 488 U.S. 891, 109 S.Ct. 226, 102 L.Ed.2d 216 (1988); *Herrington v. Sonoma County*, 857 F.2d 567, 569 (9th Cir.1988), *cert. denied*, 489 U.S. 1090, 109 S.Ct. 1557, 103 L.Ed.2d 860 (1989).

In *Bannum*, this court adopted a similar rule. The case involved an operator of community training centers that lost its contract with the United States Bureau of Prisons because it could not show that its proposed center complied with a Louisville zoning ordinance requiring a special permit for community treatment centers for felony offenders. The operator claimed that its equal protection rights had been violated; Louisville responded that "because Bannum did not apply for a conditional use permit it had not satisfied the requirement of finality, and it should not be permitted to litigate the constitutional issue of equal protection." *Bannum*, 958 F.2d at 1361–62. This court agreed with the Seventh and Ninth Circuits that the *Williamson* finality analysis must be applied in equal protection cases.

> What is needed before litigation can proceed in a case such as this is that proceedings have reached some sort of an impasse and the position of the parties has been defined. We do not want to encourage litigation that is likely to be solved by further administrative action and we do not want to put barriers to litigation in front of litigants when it is obvious that the process down the administrative road would be a waste of time and money. *We believe that finality, not the requirement of exhaustion of remedies, is the appropriate determinant of when litigation may begin.* By finality we mean that the actions of the city were such that further administrative action by Bannum would not be productive.

958 F.2d at 1362–63 (emphasis added). The court ultimately concluded that Bannum's case was ripe for adjudication, although further administrative remedies could have been pursued, because pursuit of further administrative redress would have been futile. The *Bannum* court specifically noted that the "futility exception" to the finality requirement had also been applied to takings claims.

We interpret *Bannum* as requiring the plaintiffs in this case to meet the same standard of finality for both their equal

protection and takings claims. Unlike the plaintiff in *Bannum*, however, the plaintiffs in this case have not demonstrated that further pursuit of their claim would be futile. The plaintiffs in this case are not limited to administrative review; as noted earlier, they may seek a remedy by an inverse condemnation action in the state courts. Thus, we cannot say that further pursuit of remedies would be futile, and we hold that the plaintiffs' equal protection claim is not ripe for review at this time.

## IV

 The plaintiffs also protest that their rights to procedural due process were violated. *See Bundo v. City of Walled Lake*, 395 Mich. 679, 238 N.W.2d 154 (1976) (someone whose liquor license was not renewed by the state should receive "rudimentary due process"). Standing alone, the plaintiffs' procedural due process claims might be ripe for review. In *Nasierowski Bros. Inv. Co. v. City of Sterling Heights*, 949 F.2d 890 (6th Cir.1991), a landowner brought an action under 42 U.S.C. § 1983, claiming that a city had violated his rights to procedural due process by enacting a zoning amendment apparently designed to prevent the plaintiff from proceeding with a proposed development. However, the plaintiff did not present a takings claim, and relied solely on his claim for procedural due process. This court held that "a procedural due process claim is instantly cognizable in federal court without requiring a final decision on a proposed development from the responsible municipal agency." *Nasierowski*, 949 F.2d at 894. We explained this holding as follows:

> Conceptually, in the case of a procedural due process claim, "the allegedly infirm process is an injury in itself," whereas, in the context of a takings claim, the alleged injury—a diminution in property value—cannot be assessed with any degree of certainty until the municipality arrives at a final decision as to how the property owner will be permitted to develop his property.

*Ibid.* (quoting *Hammond v. Baldwin*, 866 F.2d 172, 176 (6th Cir.1989)). This court also emphasized that "Nasierowski's injuries accrued and attached *immediately* when [the City Council] convened in executive session and materially deviated from the recommendations of the planning commission, thus subverting the purpose of the duly conducted notice and comment process." 949 F.2d at 894 (emphasis added). *See also Seguin v. City of Sterling Heights*, 968 F.2d 584, 589 (1992) (*Nasierowski* held that "*Williamson* final decision requirement does not apply to procedural due process challenges *to a zoning ordinance*") (emphasis added).

This case can be readily distinguished from *Nasierowski*. It does not present a pure claim of procedural due process, but instead involves several constitutional claims. This factor has been considered significant in several other cases. In *Hoehne v. San Benito County*, 870 F.2d 529, 532 (9th Cir.1989), the Ninth Circuit stated that "the final decision requirement is applicable to substantive due process and equal protection claims brought to challenge the application of land use regulations, and is most likely applicable to *related* procedural due process claims." (citations omitted) (emphasis added). Furthermore, in *Harris v. Riverside County*, 904 F.2d 497, 500 (9th Cir.1990), the court stated that "[p]rocedural due process claims arising from an alleged taking may be subject to the same ripeness requirements as the taking claim itself depending on the circumstances of the case." The *Harris* court eventually ruled that "because [the plaintiff's] procedural due process claim does not directly arise from, or rely on, his taking claim," it was not subject to ripeness constraints. 904 F.2d at 501.

*Harris* is important to this case, because this court relied heavily upon it in *Nasierowski*, noting that the two cases were "nearly identical" and "essentially indistinguishable." *Nasierowski*, 949 F.2d at 895. The *Nasierowski* court also stated that *Harris* marked a departure from earlier Ninth Circuit cases indicating that the final decision rule applied to all types of constitutional claims, and noted that "*Harris* applies when the alleged deprivation of procedural due process results in the instantane-

ous · infliction of a concrete injury." 949 F.2d at 895 n. 6. Therefore, notwithstanding its broad language, *Nasierowski* appears to stand merely for the sensible proposition that while different circumstances may produce different results, the final decision rule does not apply when the denial of procedural due process itself creates an injury.

The circumstances in this case, however, are quite different from those in *Nasierowski*, and weigh heavily in favor of subjecting the plaintiffs' procedural due process claim to the same ripeness requirements as the other claims. The key issue in this case is whether the state properly denied full compensation to the plaintiffs for their fishing licenses. Such an issue "is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury," *Williamson*, 473 U.S. at 193, 105 S.Ct. at 3120 (1985), and should thus be subject to a ripeness inquiry. The plaintiffs' procedural due process claim is ancillary to this main issue; they simply assert that they were not given an effective opportunity to defend their fishing rights before they were taken. There was thus no "instantaneous infliction of a concrete injury." Until the state courts have ruled on the plaintiffs' inverse condemnation claim, this court cannot determine whether a taking has occurred, and thus cannot address the procedural due process claim with a full understanding of the relevant facts. Furthermore, addressing the plaintiffs' procedural due process claim at this stage of the proceedings would allow future plaintiffs effectively to circumvent the ripeness requirement for takings claims simply by attaching a procedural due process claim to their complaint. Thus, we hold that under the circumstances of this case, the plaintiffs' procedural due process claim is not ripe, and thus cannot be heard by this court.

## V

The plaintiffs present several state constitutional claims, and also contend that Michigan offered them compensation pro-grams that should be enforced in the interests of equity. The district court addressed these claims pursuant to its pendent jurisdiction; however, because the district court lacked subject matter jurisdiction over any federal· issues, it could not properly rule on pendent state issues. "Our decision in [*Collard v. Kentucky Bd. of Nursing*, 896 F.2d 179, 184 (6th Cir. 1990)] teaches that those claims should have been · 'dismissed without prejudice once plaintiff's federal jurisdictional claim was held to be inappropriate.' " *Whittington v. Milby*, 928 F.2d 188, 194 (6th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 236, 116 L.Ed.2d 192 (1991). As the Seventh Circuit has noted, "[a] federal court may exercise pendent jurisdiction over state law claims in an appropriate case. To do so, however, the court must have an independent source of federal subject matter jurisdiction." *Kauth v. Hartford Ins. Co. of Ill.*, 852 F.2d 951, 954 (7th Cir.1988). *See also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966) ("The federal claim must have substance sufficient to confer subject matter jurisdiction on the court.") Thus, the state issues should also be dismissed for lack of jurisdiction.

## VI

We recognize that this case has been in the courts for several years, and that our decision will delay a final judgment on its merits. However, our jurisdiction is limited, and may only be used within the boundaries established by Congress and the Constitution. This case falls outside those boundaries, and any decision on its merits would therefore be inappropriate. Accordingly, the decision below is VACATED, and the case is remanded to the district court with orders to DISMISS.