**Aditi VASHI and Rakesh Vashi, Plaintiffs–Appellants,**

v.

**The CHARTER TOWNSHIP OF WEST BLOOMFIELD, MICHIGAN; Commissioners Raymond R. Holland, Anne H. Jardon, Donald A. Ziemer, Lawrence Brown, and John Freed, Defendants–Appellees.**

No. 01–2012.

United States Court of Appeals, Sixth Circuit.

Sept. 5, 2003.

Juan A. Mateo, James C. Howarth, Detroit, MI, for Plaintiffs–Appellants.

Carol A. Rosati, Marcelyn A. Stepanski, Johnson, Rosati, LaBarge, Aseltyne & Field, Farmington Hills, MI, for Defendant–Appellee.

Before NORRIS, DAUGHTREY, and ROGERS, Circuit Judges.

## MEMORANDUM

ALAN E. NORRIS, Circuit Judge.

## OPINION

Plaintiffs Aditi and Rakesh Vashi, who are husband and wife, appeal from an order of summary judgment granted by the district court in favor of defendants, the Charter Township of West Bloomfield, Michigan, and several individuals who sit on the Township's Planning Commission. Plaintiffs alleged that certain rights guaranteed by the Federal Constitution, including their right to equal protection, had been infringed by the Planning Commission when it recommended that their application to operate a daycare center in a local church not be approved. Because it concluded that plaintiffs had failed to obtain a final decision as required by *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), and as construed by this court in *Bannum, Inc. v. City of Louisville,* 958 F.2d 1354 (6th Cir.1992), and *Bigelow v. Michigan Dep't of Nat. Res.,* 970 F.2d 154 (6th Cir.1992), the district court granted judgment to defendants and dismissed plaintiffs' claims without prejudice.

Having had the benefit of briefing and of oral argument, we discern no error in the reasoning of the district court. Furthermore, because that court set forth its analysis at length in a published opinion, *Vashi v. Charter Township of West Bloomfield,* 159 F.Supp.2d 608 (E.D.Mich.2001), we believe that no useful purpose would be served by reiterating that reasoning here.

The judgment of the district court is **affirmed.**

ROGERS, Circuit Judge, dissenting.

Aditi and Rakesh Vashi, plaintiffs, allege that their constitutional rights were violated when the West Bloomfield, Michigan, Planning Commission voted not to recommend approval by the Township Board of their application to run a daycare facility in a local church. The district court granted summary judgment to defendants because it concluded that the claim was essentially a zoning dispute and that plaintiffs had failed to obtain a final decision as required by *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). Because a recommendatory vote that practically terminates an application is sufficiently final for purposes of claims of racial or religious discrimination under 42 U.S.C. § 1983, and because § 1983 does not require prior exhaustion of administrative remedies, I would reverse.

The Vashis lived in West Bloomfield for several years before the facts giving rise to this dispute occurred. During that time, Mrs. Vashi worked at various daycare centers and also operated a small center out of her home. In July 1999, she met with Reverend Bruce Quatman, the pastor of the Holy Spirit Lutheran Church, to ask if she could lease a portion of the facility for a daycare center. The Vashis subsequently submitted a proposal, which Reverend Quatman presented to the church council. In a letter dated August 24, 1999, he indicated that the council had authorized Mrs. Vashi to have the building inspected for suitability as a daycare center. Furthermore, the letter stated "The Church Council is prepared to lease space to Mrs. Vashi upon the completion of an inspection by proper authorities and necessary improvements made to our building at her expense."

Mrs. Vashi contacted the Township's planning director, Thomas Bird, to find out what would be needed to meet the necessary requirements. Bird allegedly told Mrs. Vashi that she "didn't know what she was getting into." He referred her to the Township's building department to determine what permits were required and also suggested that she consult an architect.

During September and October, Mrs. Vashi engaged the services of an architect who made some preliminary recommendations. Due to the expense, however, Mrs. Vashi did not ask him to prepare a full-blown site plan. During this period, she also ordered three fire resistant doors in the wake of a fire inspection. On November 5, 1999, a licensing consultant for the state found the premises suitable for 65 children and, three days later, a health inspection uncovered no significant concerns. Although no formal lease was executed, plaintiffs allege that they entered into a verbal understanding of the conditions and terms of a five-year lease with the church.

In October 1999, Mrs. Vashi submitted her proposal to the Planning Commission. She contends that a preliminary "work session" is a standard practice so that any potential problems can be flagged and addressed before a formal recommendation is made. In her case, however, she was told by the secretary of the planning director that no such session was necessary, leading her to believe that her plan would be recommended.

On November 9, 1999, plaintiffs attended a public hearing before the Planning Commission. The Commission consists of seven people. Unknown to plaintiffs, two of the members had some affiliation with Holy Spirit Lutheran Church: Chairman Donald Ziemer had been a member of the congregation from 1976 until 1994; John Freed had been its pastor until 1992 and remained a member of the church.

During the hearing, neighbors expressed concern about the impact that the play area might have on their homes. Also, because the church sits across from the local high school, which has an enrollment of 2,200, reservations were expressed about traffic and safety.

Ultimately, the Commission voted 5–2 to forward a recommendation to the Township Board to deny plaintiffs' application. A letter to the Vashis from Thomas Bird dated November 11 listed the reasons for the negative recommendation: added traffic, interference with the orderly development of the area, an inadequate play area, and the fact that "this proposal places a second special use approval in a facility that has already been granted special use approval."

In the wake of the Commission's recommendation, the church council concluded that it would be unwise to pursue hosting a daycare facility. A letter from Reverend Quatman stated, "Our Church Council does not want to do anything that would put us at odds with West Bloomfield Township." Rather than seek a ruling from the Township Board, the body which officially acts upon the Commission's recommendation, the Vashis withdrew their application on November 18.

On October 24, 2000, nearly a year later, plaintiffs filed a four-count complaint based upon the actions of the Planning Commission, naming as defendants the Township and the five commissioners who voted not to recommend their proposal. The complaint essentially charges that the decision-makers acted out of a discriminatory animus based upon plaintiffs' ethnic background (East Indian) and religion (Hindu). It also includes a state-law claim of gross negligence.

The district court granted summary judgment to defendants, reasoning that plaintiffs had failed to comply with the finality requirement spelled out in *Williamson, supra,* with respect to zoning challenges:

> [T]he actual history of the plaintiffs' daycare site plan and special use application also supports only one reasonable conclusion—that the Planning Commission was only a recommending body, and that the Township Board would make the final decision as to the plaintiffs' application. Plaintiffs were told repeatedly at the November 9, 1999 hearing that the Township Board renders final decisions on site plan and special use applications. The Planning Commission passed a motion to forward a *recommendation* to the Board that plaintiffs' daycare application be denied. Planning Director Bird communicated to the plaintiffs in his November 11, 1999 letter that the Planning Commission had *"recommended* denial to the Township Board." Church Pastor Quatman recognized that the Planning Commission had *"recommended* denial of the petition." Finally, plaintiffs communicated to the Township that they wished to *withdraw* their petition consistent with the Church's decision not to host a day care program. Construing the pleadings and evidence in a light most favorable to the plaintiffs, the Planning Commission's November 9, 1999 decision was not a final decision of the Township as a matter of law. On November 9, 1999, the Township had not inflicted an injury on the plaintiffs, and only subsequent resort to the Township Board would have resulted in a conclusive Township determination. . . .

*Vashi v. Charter Township of West Bloomfield,* 159 F.Supp.2d 608 (E.D.Mich.2001) (emphasis original) (citations omitted). This appeal followed. This court reviews the grant of summary judgment de novo.

*Dubuc v. Green Oak Township,* 312 F.3d 736, 743 (6th Cir.2002).

The district court looked primarily to *Williamson, supra,* for support of its conclusion that plaintiffs' claim was not ripe for appeal because they had not obtained a final decision from the Township Board. In *Williamson,* the Court addressed "the question whether Federal, State, and Local governments must pay money damages to a landowner whose property allegedly has been 'taken' temporarily by the application of government regulations." *Id.* at 185. The Court never reached the substantive issue, however, because it concluded that "a claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Id.* at 186.

In my view, the district court's reliance upon *Williamson* was misplaced. *Williamson* involved a taking claim, and the *Williamson* Court explicitly relied upon the theory that a violation of the Takings Clause only occurs when the government has failed to provide just compensation, and no constitutional violation has yet occurred when there is still an administrative possibility of just compensation. 473 U.S. at 194–97. The Court held that the takings case was not "ripe," in part at least, because the constitutional violation has not yet occurred. 473 U.S. at 194–95.

In that sense the *Williamson* case is similar to garden-variety ripeness cases in which plaintiffs make a facial challenge to a statute, rule or policy before the statute, rule, or policy is actually enforced against the plaintiff. *See Abbott Labs. v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967) (pre-enforcement challenge to FDA labeling regulations); *Ohio Forestry Ass'n v. Sierra Club,* 523 U.S. 726, 118 S.Ct. 1665, 140 L.Ed.2d 921 (1998) (challenge to general provisions of a logging plan for a national forest); *Nat'l Park Hospitality Ass'n v. Dep't of the Interior,* — U.S. ——, 123 S.Ct. 2026, 155 L.Ed.2d 1017 (2003) (pre-dispute challenge to regulation governing procedures for resolving certain government contractual disputes). This case involves neither a taking claim nor a pre-enforcement challenge to a rule or policy; the ripeness doctrine thus appears inapplicable.

In addition to *Williamson,* the district court also relied upon *Bigelow v. Michigan Department of Natural Resources,* 970 F.2d 154 (6th Cir.1992). *Bigelow* involved not only a classic "taking" claim, but also an associated equal protection claim. Plaintiffs were commercial fishermen who objected to the evisceration of the value of their fishing licenses after fishing rights were reallocated favorably to Native Americans in accordance with treaties with the Ottawa and Chippewa tribes. While this court found that both the taking claim and the "dual" protection claim were not ripe, the case appears to fall within the category of those in which a facial challenge is being made to an across-the-board state action before that action was applied with specificity to particular parties.

As the district court noted, the *Bigelow* case relied upon *Bannum v. City of Louisville,* 958 F.2d 1354 (6th Cir.1992), to support its conclusion that plaintiffs must "meet the same standard of finality for both their equal protection and takings claims." *Bigelow,* 970 F.2d at 159–60. *Bannum* indeed appears to suggest that a land use case is not final when a party has not sufficiently exhausted administrative

remedies.[1] Since the claim was permitted to proceed in *Bannum*, however, this language was not necessary to the decision in the case. Moreover, *Bannum* (as well as *Bigelow*) in this regard relied upon Seventh and Ninth Circuit cases that involved "equal protection" challenges that in essence supplemented takings claims by challenging the reasonableness of a particular action regulating land use. *See Unity Ventures v. Lake County*, 841 F.2d 770, 775 (7th Cir.), *cert. denied*, 488 U.S. 891, 109 S.Ct. 226, 102 L.Ed.2d 216 (1988); *Herrington v. County of Sonoma*, 834 F.2d 1488, 1494 (9th Cir.1987), *cert. denied*, 489 U.S. 1090, 109 S.Ct. 1557, 103 L.Ed.2d 860 (1989). In short, *Williamson*, *Unity Ventures*, *Herrington*, and *Bigelow* all (1) involved taking claims or claims closely associated with taking claims, and/or (2) involved challenges to across-the-board state actions that had not been specifically applied to the plaintiffs. Moreover, none of the cases involved equal protection claims alleging ethnic or religious discrimination. *See Unity Ventures*, 841 F.2d at 775 n. 2.

In contrast with cases like *Williamson* and *Bigelow*, the Supreme Court has held clearly that the requirement of exhaustion of state administrative remedies does not apply in suits brought under § 1983. *See Patsy v. Bd. of Regents*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). Even though an exhaustion requirement might conserve judicial resources, and permit state agencies to correct their own errors, such a requirement would interfere with the desire of Congress to provide a federal forum when constitutional rights were violated. *Id.* at 506 (reviewing 1871 Congress' mistrust of state court factfinding

processes), 532–33 (J. Powell, dissenting) (finding that considerations underlying exhaustion rule include conservation of judicial remedies and permitting states to correct their errors).

The finality and exhaustion doctrines serve many of the same purposes, yet they must be distinguished in order to reconcile *Patsy* with the cases that follow *Williamson*. The *Williamson* Court distinguished *Patsy* as follows:

> The question whether administrative remedies must be exhausted is conceptually distinct, however, from the question whether an administrative action must be final before it is judicially reviewable.... While the policies underlying the two concepts often overlap, the finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury; the exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate. *Patsy* concerned the latter, not the former.

473 U.S. at 192–93.

Applying this distinction, the instant case appears more like *Patsy* than like *Williamson* or its progeny. There is no taking claim or anything like a taking claim. The Vashis' equal protection claim is based upon ethnicity and religion, and not on the lack of a rational basis for a zoning decision. The Vashis are not challenging some city ordinance that has not

---

1. The *Bannum* court stated:

   By finality we mean that the actions of the city were such that further administrative action by Bannum [plaintiff] would not be productive. This test, of course, can be met

   by the exhaustion of remedies. It can also be met by other evidence and can be satisfied prior to compliance with all the required procedures.
   *Id.* at 1362–63.

yet been applied to them. Instead, they are challenging a planning commission decision, a decision that adversely affected them, they assert, by deterring the church from supporting their application to the Township Board, thereby precluding them from setting up their child care center. Here "the initial decisionmaker has arrived at a definite position on the issue that inflicts an actual, concrete injury." *Williamson*, 473 U.S. at 193.

Moreover, while the commission's decision was in the form of a recommendation, the city ordinance clearly provided that unless the applicants brought their case to the Township Board, the commission's decision was "final." WEST BLOOMFIELD TOWNSHIP, MI, Code § 26–40 (1995). That is, without further action by the Vashis, there would be no further consideration by the Township. Unlike in more traditional finality cases, the town was not still considering what to do. *Compare Dalton v. Specter*, 511 U.S. 462, 468–70, 114 S.Ct. 1719, 128 L.Ed.2d 497 (1994); *Franklin v. Massachusetts*, 505 U.S. 788, 798, 112 S.Ct. 2767, 120 L.Ed.2d 636 (1992); *FTC v. Standard Oil of California*, 449 U.S. 232, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980).

Concededly there is little in the record to support the allegation that the commission's decision was based on ethnicity or religion, and summary judgment may ultimately be appropriate on that ground. But if there were evidence that the commission denied the application on such grounds, and the commission's denial could be shown to have caused the putative landlord to back out of the proposal, the doctrines of ripeness and finality, properly understood, should not preclude this suit.