**Mike CRAMER, Plaintiff,**

v.

**Ronald VITALE, et. al., Defendants.**

**Civil Action No. 04–CV–70712–DT.**

United States District Court,
E.D. Michigan,
Southern Division.

March 1, 2005.

Angela Diggs–Jackson, Oak Park, MI, for Plaintiff.

Michael W. Groebe, Reginald M. Turner, Jr. Clark Hill (Detroit), Eric B. Gaabo, Detroit City Law Department, Detroit, MI, for Defendants.

## ORDER AFFIRMING MAGISTRATE MAJZOUB'S REPORT AND RECOMMENDATION

O'MEARA, District Judge.

The Court having reviewed the Magistrate Judge's Report and Recommendation as well as any objections thereto filed by the parties, and being fully advised, now therefore:

**IT IS ORDERED** that the Court affirms the Magistrate Judge's Report and Recommendation.

## REPORT AND RECOMMENDATION

MAJZOUB, United States Magistrate Judge.

***RECOMMENDATION:*** The Court recommends that Defendants' Motion For Rule 11 Sanctions be GRANTED in the amount of One Dollar ($1.00).

\* \* \*

This case arises out of the appeal of a May 8, 2003 decision by the City of Detroit Board of Zoning Appeals ("BZA") granting Defendant Vitale a variance to erect a parking lot billboard. Plaintiff alleges that "Defendant Vitale's nonconforming sign now stands directly in front of Plaintiff's painted sign and obscures it from public view" (Plaintiff's Complaint, pg. 4, ¶ 26). On December 12, 2003, Plaintiff commenced an action in Wayne County Circuit Court for review of the BZA's decision. The case was removed to this Court on February 25, 2004 following which the state law claims were remanded back to Wayne County Circuit Court on March 11, 2004. Plaintiff's remaining federal claims were premised on an unlawful taking under 42 U.S.C. § 1983 and the Equal Protection Clause of the Fourteenth Amendment.

On September 16, 2004, Judge O'Meara issued an Order Granting Defendants Ronald Vitale's and Yorkshire Food Market's Motions for Summary Judgment and For Rule 11 Sanctions. Plaintiff filed timely objections to sanctions and a motion for rehearing which was denied by Judge O'Meara on October 6, 2004. In the Order Denying Plaintiff's September 22, 2004 Motion for Rehearing, Judge O'Meara referred to the undersigned Defendant's Motion For Bill of Costs and Rule 11 Sanctions which are now before the Court.

### JURISDICTION

Before addressing Defendants' Bill of Costs and Rule 11 Sanctions, the Court must first determine the proper scope of its jurisdiction. Judge O'Meara referred the instant matter to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and Fed. R.Civ.P. 72(a). Title 28 U.S.C. § 636(b)(1)(A) provides:

> A judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment . . .

In *Massey v. City of Ferndale,* 7 F.3d 506 (6th Cir.1993), the court concluded that "motions for sanctions, fees and costs are not to be determined by a magistrate judge[ ] ... because such post-dismissal motions are not 'pretrial matters' pending before the court." *Id.* at 509–10 (citations omitted); *see also Homico Constr. & Dev. Co., v. Ti–Bert Sys., Inc.,* 939 F.2d 392, 394 n. 1 (6th Cir.1991)("[The district court referred the motion of the defendant for attorney fees] to the magistrate 'for a report and recommendation as to whether fees should be allowed, and if so, in what amount.' We note that, since the case was dismissed prior to consideration of sanctions, this was not a pretrial matter and thus, could not have been properly referred to the magistrate judge under section 636(b)(1)(A).").

Fed.R.Civ.P. 72(a) provides:

> A magistrate judge to whom a pretrial matter not dispositive of a claim or defense of a party is referred to hear and determine shall promptly conduct such proceedings as are required and when appropriate enter into the record a written order setting forth the disposition of the matter.

In *Massey,* the court concluded that a Rule 11 motion following dismissal of a case was dispositive of the party's claim for sanctions such that a magistrate judge did not have the authority to rule upon such a motion under Fed.R.Civ.P. 72(a). *Massey,* 7 F.3d at 510 (citing *Weatherby v. Sec'y of HHS,* 654 F.Supp. 96, 97 (E.D.Mich.1987)); *see also Bennett v. General Caster Serv. Of N. Gordon Co.,* 976 F.2d 995, 998 (6th Cir.1992). Dispositive claims, such as Defendants' claim for Rule 11 sanctions, are appropriately addressed in the form of a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R.Civ.P. 72(b). Accordingly, the undersigned declines to "hear and determine" the instant matter but instead issues the instant Report and Recommendation addressing Defendants' claim for sanctions.

## FEDERAL RULE OF CIVIL PROCEDURE 11; STANDARD FOR SANCTIONS

■ In support of their Motion for Rule 11 Sanctions, Defendants Vitale and Yorkshire Food Markets submitted Documentation of Their Reasonable Attorney Fees and Costs in which they seek an award of attorney fees in the amount of $11,828.50. That amount is based on 10.3 hours at a rate of $295 for the services of Reginald Turner and 58.6 hours at a rate of $150 for the services of Michael Groebe.

■ Rule 11 of the Federal Rules provides:

> By presenting to the court ... a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed.R.Civ.P. 11(b)(1)-(4). A district court has broad discretion in deciding the nature and extent of sanctions to impose under Rule 11. *See INVST Fin. Group, Inc. v. Chem–Nuclear Sys., Inc.,* 815 F.2d 391, 401 (6th Cir.1987); *see also Runfola & Assocs. v. Spectrum Reporting II, Inc.,* 88 F.3d 368, 376 (6th Cir.1996). The test for imposing Rule 11 sanctions is whether the individual's conduct was reasonable under the circumstances. *See Ridder v. City of Springfield,* 109 F.3d 288, 293 (6th Cir. 1997).

In their motion, Defendants contend that Plaintiff and his counsel failed to make reasonable inquiry before filing the instant action. Specifically, Defendants assert that Plaintiff "failed to bring a ripe 42 U.S.C. § 1983 takings claim" and that Defendants were "clearly not state actors" as required to bring a claim under 1983 (Defendants' Motion, pg. 7–9).

### STATE ACTION

 Title 42 U.S.C. § 1983 provides that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law ...

Defendants assert that they could not be considered state actors for purposes of § 1983. Generally private parties, like Defendants Vitale and Yorkshire Food Market, are not considered state actors sufficient to impose liability under § 1983. In certain circumstances, however, private parties may become state actors for purposes of § 1983. "Private persons, jointly engaged with state officials in [a] prohibited action, are acting under color of law for

purposes of [§ 1983]." *Tahfs v. Proctor,* 316 F.3d 584, 590 (6th Cir.2003). In *Tahfs,* the Sixth Circuit Court of Appeals explained:

To act under color of law does not require that the accused be an officer of the State. It is enough that he is a willing participant in joint activity with the State or its agents. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)(internal citations omitted).

*Id.* A private party's conduct may constitute state action where (1) the private party exercises powers which are traditionally reserved to the state, (2) the state significantly encouraged or coerced the private party to act as the state, or (3) where there is a sufficiently close relationship between the state and the private actor so that the acts taken may be attributed to the state. *Id.* at 591 (internal citations omitted).

In this case, Plaintiff alleged in his complaint that

BZA and Vitale and Yorkshire Market worked in concert to intentionally cut off Plaintiff's 1st Amendment right to freedom of Speech under the U.S. and Michigan Constitution. Therefore The Board of Zoning Appeals and Vitale' actions fall under 42 U.S.C.1983 ...

(Plaintiff's Amended Complaint, ¶ 12). Plaintiff's common allegations state the following:

24. On May 8, 2003 the BZA issued a Decision and Order waiving the deficiencies of Defendant Vitale's non-conforming advertising sign without requiring Defendant Vitale to present substantial evidence of practical difficulty, hardship or necessity as required for special land use variances according to statute. MCL 125.585

27. The BZA acted outside of the scope of its authority when it granted Defendant's request for a non-conforming use variance without making the statutorily required findings.

29. Defendant BZA deliberately ignored the impact that granting Defendant Vitale's request for an exception to the law, would have on Plaintiff's legal rights to advertise his business.

(Plaintiff's Amended Complaint, ¶¶ 24–29). In Count II of his complaint, Plaintiff alleges that "Defendants Vitale and BZA have conspired against Plaintiff to deprive him of rights and privileges secured by the Constitution." *Id.* ¶ 42.

Having reviewed Plaintiff's allegations, the Court concludes that, while tenuous, Plaintiff's theory that Defendants' conduct *could* amount to state action was not without legal support. In *Tahfs*, the district court dismissed Plaintiff's § 1983 claims finding that the private party Defendants were not state actors. The district court also awarded Defendants sanctions under Rule 11. On appeal, the Sixth Circuit pointed out that:

> [W]hile Tahf's state actor argument is ultimately unavailing, it was not completely unwarranted by existing law, nor did the complaint contain factual allegations unwarranted by the evidence. Although Tahfs failed to include more than bare, conclusory assertions in her complaint, and thus failed to plead with the requisite specificity necessary to make an actionable claim, she did not fail in this endeavor by a wide margin.

*Tahfs*, 316 F.3d at 594. Similarly in this case, the Court is convinced that Plaintiff's complaint contained allegations of concerted action between Defendants and the City of Detroit. It is not only possible, but realistic that a private party may conspire with the state on issues of land use and zoning. This is not to say that the Court

encourages the unwarranted and baseless filings of complaints without reasonable inquiry into both the facts and law. However, in this case, Plaintiff plead his theory of Defendants' § 1983 liability and cited cases in support of such theory.

In fact, Plaintiff relied on controlling precedent from the Sixth Circuit to support his argument that "a private defendant may be found to act under color of state law when he participates in a conspiracy with state officials to deprive another of a constitutionally protected right." (Plaintiff's Response to Defendants' Motion for Summary Judgment, pg. 13). Like the *Tahfs* Court, this Court is hesitant to equate the standard for dismissal and summary judgment with that of Rule 11 sanctions. While Plaintiff may have failed to overcome Defendants' Motion for Summary Judgment, his claim that Defendants were state actors was supported by existing law and was not so unreasonable to warrant sanctions under Rule 11.

### RIPENESS

Defendants Motion for Sanctions is also premised on the assertion that Plaintiff failed to bring a ripe § 1983 claim. In *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), the Supreme Court set forth a two prong test for determining whether a takings claim is ripe for adjudication. First, the court must consider whether "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Id.* at 186, 105 S.Ct. 3108. Additionally, a plaintiff must seek compensation through the state before proceeding on a takings claim.

Plaintiff argues that the decision of the BZA was a final decision within the meaning of *Williamson*. Defendants contend,

however, that in order to satisfy the finality prong of *Williamson,* Plaintiff must exhaust all state procedures for challenging the zoning decision, including the statutory right to appeal a BZA decision to the state circuit court (*See* Defendants' Brief in Support of Motion for Summary Judgment, pg. 8, citing *Seiler v. Charter Twp.,* 53 F.Supp.2d 957, 962 (E.D.Mich.1999)). The *Williamson* Court eloquently explained the difference between finality of a judgment for purposes of ripeness of a 1983 claim and exhaustion of state remedies:

> The question whether administrative remedies must be exhausted is conceptually distinct, however, from the question whether an administrative action must be final before it is judicially reviewable (internal citations omitted). While the policies underlying the two concepts often overlap, the finality requirement is concerned with whether the initial decisionmaker has arrived at a definite position on the issue that inflicts an actual, concrete injury; *the exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate.*

*Williamson,* 473 U.S. at 192–93, 105 S.Ct. 3108 (emphasis added).

In *Williamson,* the respondent sought approval from the Williamson Planning Commission for a development project. The Planning Commission disapproved respondent's plan and, without appealing that decision to the Board of Zoning Appeals, respondent filed suit under § 1983 alleging that the Commission had taken its property without just compensation. The Court concluded that respondent's claims were unripe for the following reasons:

> [R]esort to the procedure for obtaining variances would result in a conclusive determination by the Commission whether it would allow respondent to develop the subdivision in the manner respondent proposed. The Commission's refusal to approve the preliminary plat does not determine that issue; it prevents respondent from developing its subdivision without obtaining the necessary variances, but leaves open the possibility that respondent may develop the subdivision according to its plat after obtaining the variances. In short, the Commission's denial of approval does not conclusively determine whether respondent will be denied all reasonable beneficial use of its property, and therefore is not a final, reviewable decision.

*Williamson,* 473 U.S. at 193–194, 105 S.Ct. 3108. In this case, the Detroit Board of Zoning Appeals was the agency charged with making the final decision regarding the placement of Defendants' sign. Although Michigan Law provides for judicial review in circuit court of a BZA decision, Mich. Comp. Laws § 125.585, an appeal to circuit court would provide a remedy only if the BZA's decision proved unlawful. Therefore, while serving to exhaust state judicial remedies, failing to appeal to circuit court does not undermine the finality of the BZA's decision for purposes of *Williamson.*

Defendants' argument also conflicts with the Supreme Court's decision in *Patsy v. Florida Board of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), where the Court held that there is no requirement that a plaintiff exhaust administrative remedies before bringing an action under § 1983. The *Patsy* Court relied on several past cases where the Supreme Court rejected similar invitations

to impose an exhaustion requirement before filing a 1983 action. *See Patsy,* 457 U.S. at 500, 102 S.Ct. 2557 (citations omitted). The Court noted that in *Steffel v. Thompson,* 415 U.S. 452, 472–73, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), it held:

> When federal claims are premised on [§ 1983]—as they are here—we have not required exhaustion of *state judicial or administrative remedies,* recognizing the paramount role Congress has assigned to the federal courts to protect constitutional rights.

*Patsy,* 457 U.S. at 500, 102 S.Ct. 2557 (quoting *Steffel* ). The Court further noted that "[t]he very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the peoples federal rights—to protect the people from unconstitutional action under color of state law, 'whether the action be executive, legislative, or judicial.' " *Id.* at 503, 102 S.Ct. 2557 (quoting *Ex parte Virginia,* 100 U.S. 339, 346, 10 Otto 339, 25 L.Ed. 676 (1879)).

The Court further gleaned Congressional intent from the fact that, in other instances, Congress specifically required exhaustion of state remedies prior to proceeding on a 1983 claim. The Court pointed out:

> A judicially imposed exhaustion requirement would also be inconsistent with the extraordinarily detailed exhaustion scheme embodied in § 1997e. Section 1997e carves out a narrow exception to the general no-exhaustion rule to govern certain prisoner claims[ ] ...
>
> The legislative history of § 1997e demonstrates that Congress has taken the approach of carving out specific exceptions to the general rule that federal courts cannot require exhaustion under § 1983. It is not our province to alter the balance struck by Congress in establishing the procedural framework for bringing actions under § 1983.

*Patsy,* 457 U.S. at 511–12, 102 S.Ct. 2557. To require Plaintiff to exhaust state judicial remedies before proceeding on a 1983 claim is contrary to the Supreme Court's holding in both *Patsy* and *Williamson.*

The Sixth Circuit has also rejected an interpretation of the *Williamson* finality requirement to include exhaustion of state remedies. In *Bigelow v. Michigan Dep't of Natural Resources,* 970 F.2d 154 (6th Cir.1992), the court considered whether a plaintiff's takings claim brought pursuant to § 1983 was ripe for judicial review. There, the plaintiffs were a group of licensed fishermen who challenged the government's restoration of aboriginal fishing rights to Michigan Indians. The plaintiffs argued that such an act amounted to a taking without just compensation under § 1983 and the Equal Protection Clause of the Fourteenth Amendment. Applying *Williamson,* the *Bigelow* court concluded:

> What is needed before litigation can proceed in a case such as this is that proceedings have reached some sort of an impasse and the position of the parties has been defined. We do not want to encourage litigation that is likely to be solved by further administrative action and we do not want to put barriers to litigation in front of litigants when it is obvious that the process down the administrative road would be a waste of time and money. *We believe that finality, not the requirement of exhaustion of remedies, is the appropriate determinant of when litigation may begin.* By finality we mean that the actions of the city were such that further administrative action by Bannum would not be productive.

*Bigelow,* 970 F.2d at 158 (quoting *Bannum v. City of Louisville,* 958 F.2d 1354 (6th Cir.1992)). In light of the foregoing, the

Court concludes that the decision of the BZA was final such that Plaintiff met the finality requirement of *Williamson* without appealing to state circuit court.[1]

■ The second step of the *Williamson* ripeness test asks whether Plaintiff sought just compensation for the alleged inverse taking. Michigan has long recognized the doctrine of inverse condemnation and provided compensation for such takings. *See Electro–Tech, Inc. v. HF Campbell Co.,* 433 Mich. 57, 88–89, 445 N.W.2d 61 (1989); *Heinrich v. City of Detroit,* 90 Mich.App. 692, 282 N.W.2d 448 (1979). In this case, Plaintiff fails to demonstrate or allege that he attempted to seek compensation through the state before filing the instant action. Therefore, Plaintiff fails to satisfy the second prong of the *Williamson* ripeness test. Accordingly, the Court concludes that Plaintiff's takings claim was unripe under *Williamson.*

■ Next, the Court considers the merit of Plaintiff's equal protection claim, brought pursuant to § 1983, premised on a violation of his First Amendment free speech. Generally, an equal protection claim is brought to challenge governmental action that distinguishes among people based on characteristics such as race, gender, or disability. However, equal protection claims may also be brought where the government discriminates among people based on the exercise of a fundamental right. *Skinner v. Oklahoma,* 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942)(using the Equal Protection Clause to strike down the Oklahoma Habitual Criminal Sterilization Act). Here, Plaintiff asserts that the placement of Defendants' sign was a direct infringement on his First Amendment right to free speech thereby implicating an equal protection claim. Now, the Court must determine whether Plaintiff's equal protection claims were ripe for review.

■ In *Bigelow,* the court addressed whether equal protection claims were subject to the finality requirement of *Williamson.* Relying on Seventh Circuit precedent, the *Bigelow* Court concluded that the *Williamson* finality requirement was applicable to both equal protection and takings claims. Thus, a ripe equal protection claim arising from a government taking must involve a final decision of the government agency responsible for applying the land use regulations. In this case, Plaintiff met this requirement rendering his equal protection claim ripe for this Court's review. The second prong of *Williamson,* requiring a plaintiff to seek compensation from the state, is unnecessary in an equal protection claim arising from a government taking. In the equal protection context, the violation is based on the manner in which the land use regulations, as applied, infringed upon a fundamental right. Here, Plaintiff alleges that his First Amendment right to free speech was violated at the time Defendants erected their billboard directly in front of Plaintiff's own advertising sign. Given the irreparable nature of the alleged injury, compensation

---

1. The Court recognizes Defendants reliance on *Seiler v. Charter Twp.,* 53 F.Supp.2d 957 (E.D.Mich.1999) where the court held that "the first prong of the Williamson finality requirement [includes] not only a denied variance request, but also the exhaustion of all state procedures for challenging the zoning decision, including the statutory right to appeal a ZBA decision to state circuit court." In reaching its conclusion, the *Seiler* court relied on an unpublished Sixth Circuit decision as well as a published decision from this District. *See Milne v. Twp. of Oregon,* 777 F.Supp. 536, 539 (E.D.Mich.1991). This Court declines to follow any of the aforementioned opinions as those opinions are unsupported by a close reading of *Williamson,* are wholly inconsistent with the Supreme Court's holding in *Patsy,* and are contrary to the Sixth Circuit's published decision in *Bigelow.*

from the state is an unnecessary requirement for ripeness considerations where the equal protection claim is premised on the violation of a fundamental right incident to a government taking.

Additionally, *"bona fide* equal protection claims arising from land-use decisions can be made independently from a takings claim and without being subject to *Williamson* ripeness." *Forseth v. Village of Sussex,* 199 F.3d 363, 370 (7th Cir.2000) (citations omitted). In *Forseth,* the court held that:

> Absent a fundamental right or a suspect class, to demonstrate a viable equal protection claim in the land-use context, the plaintiff must demonstrate 'governmental action wholly impossible to relate to legitimate governmental objectives.'

*Forseth,* 199 F.3d at 371 (internal citations and quotations omitted). Plaintiff alleges that the BZA's decision to grant Defendant Vitale a variance for the placement of Vitale's sign was "intended only to block the Freedom of Speech of the Plaintiff" (Plaintiff's Complaint, pg. 5, ¶ 32). Plaintiff further alleges that Defendant's petition for a variance was not substantiated by evidence of hardship and Defendant failed to demonstrate that his "property could not reasonably be used in a manner consistent with existing zoning; therefore the Board had no legal or equitable basis to grant the variance." *Id.* Thus, on the face of his complaint and independent from both his takings and First Amendment equal protection claims, Plaintiff's allegations were sufficient to state an equal protection claim based on the alleged arbitrary and capricious conduct of the BZA.

## CONCLUSION

Having reviewed Plaintiff's claims and Defendants' arguments against the same, the Court concludes that Plaintiff had a reasonable basis in law to support his assertion that Defendants were state actors for purposes of § 1983. The Court is also convinced that Plaintiff's § 1983 claim met the finality prong of *Williamson* without filing an appeal to state circuit court. Plaintiff failed, however, to satisfy the second prong of *Williamson* in that he did not seek compensation from the state for the alleged inverse condemnation. Accordingly, Plaintiff's 1983 claim based on the alleged unlawful taking was unripe for this Court's review. On the other hand, Plaintiff presented a ripe equal protection claim based on an alleged infringement of his First Amendment right to free speech incident to an alleged government taking. Finally, Plaintiff alleged a second equal protection claim separate and distinct from his takings claim based on allegations that the BZA's decision was not rationally related to a legitimate government objective. Therefore, the Court concludes that Plaintiff and his counsel had a reasonable basis in law for filing the instant action. Applying the reasonableness standard for Rule 11 sanctions, the Court recommends that Defendants be awarded an amount equal to one dollar ($1.00).

## NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Services,* 932 F.2d 505 (6th Cir.1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might

have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n Of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Dec. 10, 2004.